ORVILLE M. CLARK v. THE VERMONT AND CANADA RAIL-
ROAD COMPANY.

*Railroad company. Fences. Damages arising from negligence
in the construction of their road. Liability for acts of the ser-
vants of their contractor.*

The provision in the charter of the Vt. & Canada R. Co., requiring them to build
and maintain fences on each side of their road, requires them to have such fences
at least as soon as they commence running their road.

In the construction of their road, the company were bound to exercise the rights
conferred upon them with a prudent regard to the rights of others; and if they
were guilty of negligence in this respect, whereby a land owner was injured, it is
not to be presumed, in the absence of proof, that the damages thus occasioned
were taken into consideration by the commissioners in their subsequent appraisal
of his land damages. The damages which they were to appraise, were those arising
from a construction of the road properly and in a prudent manner.

A person is not liable for injuries occasioned by the acts or neglect of the servants of
one who has contracted to do a piece of work for him by the job.

ACTION ON THE CASE to recover for damages sustained by the
plaintiff connected with the construction, by the defendants, of their
railroad across the plaintiff's farm. Plea, the general issue ; trial
by jury, March Term, 1855,—PECK, J., presiding.

It appeared on trial that the defendants located their road
through the farm of the plaintiff, and commenced work thereupon
in October, 1849, and so far completed their road, that cars ran
upon it in September, 1850. The damages of the plaintiff in conse-
quence of such location were appraised by commissioners, and the
appraisal was appealed from, and the final appraisal by the second
board of commissioners was made in July, 1851, and their award
of damages paid. The plaintiff claimed to recover in this action
for damages done by animals straying upon a field of his of about
eight acres, through which the defendants' road passed, and a field
of his of about seventy acres adjoining to, and on the west side of
the road, during the fall of 1849, and the summer of 1850, in con-
sequence of the land taken by the defendants for their road being
unfenced. He also claimed to recover for damages done to about
two acres of oats in said field of eight acres, in the same way, after
the cars commenced running in the fall of 1850; also for damages
done to his crops in a field not adjoining the road, in consequence
of bars leading into said field being left down, in the summer of

1850, by workmen upon the defendants' road. This field and bars were about forty rods from the highway and about the same distance from the defendants' railroad; on the line of the railroad were some temporary shanties occupied by day-laborers who were at work on the railroad, in the employ of men who had taken a job of the defendants for grading their road, and these laborers were in the habit of going through these bars to get water to drink, and for their families, and, while thus engaged on said railroad, on one of these occasions while after water, some of these laborers left the bars down and the plaintiff's cattle entered through the bars and did the damage claimed. The plaintiff also claimed to recover for damages done to his meadow by the workmen upon the defendants road in the winter of 1849 and 1850, in drawing stones with teams across the same and using a small piece of land by the side of said railroad to deposite and dress said stone thereupon. In relation to the stone so drawn, it appeared that the plaintiff gave said workmen, who had taken a job of grading and masonry on the defendants railroad, leave to take said stone from a ledge upon his land but no express license or leave to draw them across his land; but it appeared that it was necessary to do so, and that no unnecessary damage was done. The plaintiff also claimed to recover for certain fence torn down by workmen employed upon the defendants road in the winter of 1849, and 1850, which was outside of the land taken by the defendants, and which was torn down by said workmen in order to make room for a highway, the former highway having been taken for the defendants' road at this point; and also for certain fence covered up in making an embankment upon said road during said winter of 1849 and 1850. The plaintiff also claimed to recover for certain timber taken by an agent of the defendants, and while in the employ of the defendants, and used in the construction of the defendants' road, in erecting a bridge. It appeared that the plaintiff had suffered damages in the respects for which he claimed damage and in the manner claimed by him. The defendants built no fence upon the sides of their road until the 28th day of April, 1851, when they commenced the building of the same and finished it through the plaintiff's farm in the forepart of June, 1851. It also appeared that the defendants might, by building the fence along the sides of their road, have prevented the dam-

ages done to crops for which the plaintiff claimed to recover in the plaintiff's field of about seventy acres, and also in all of said field of about eight acres except a small portion thereof on the west side of said road, and that said fence to so protect said fields could have been built and maintained without interfering with the construction of said road.

No damage was claimed for injury done by cattle or for want of fences accruing subsequent to the fall of 1850. There was no proof offered on either side to show whether the damages claimed were or were not claimed in the hearing before, or allowed in the award of the commissioners.

The court decided that, as to the claim for the item for the workmen leaving the bars down, the defendants were not liable; and that all of the other items of damages, (except for the timber,) claimed by the plaintiff, might have been appraised by said commissioners, and that the plaintiff could not recover except for said timber, and instructed the jury to return a verdict for the value of said timber only. Exceptions by the plaintiff.

*H. B. Smith* for the plaintiff.

———— ———————— for the defendants.

The opinion of the court was delivered by

BENNETT, J. There are several grounds upon which the plaintiff seeks to recover beyond what was allowed him in the county court, and we will first consider that class of claims for damages, resting in the neglect or omission of the defendants, in not fencing their road.

. The case finds that the defendants located their road through the plaintiff's farm, and commenced working in October, 1849, and that it was so far completed that they commenced running it in September, 1850; and that the defendants caused no fence to be built on their road until the 28th of April, 1851; and that the fence was not finished through the plaintiff's farm until the forepart of June, 1851. The charter of the railroad company requires them " to build and maintain a sufficient fence on each side of their railroad through its whole route, where a fence may be requisite for the owners or occupants of the adjoining land." Though the

charter prescribes in terms, no limitation as to the time in which the fences should be built, yet one must be fixed as near as may be, by construction.

The railroad act of 1850, made it the duty of all railroad companies, thereafter chartered, to fence their roads by the time they should be completed and in running order; and we think that, under the defendants' charter, it is no more than reasonable to require the defendants to have the fences built, at least, as soon as they shall commence running their road. This, both the policy of the law and the reason of the thing requires; and this is but a reasonable construction of the defendant's charter. If, then, this duty is not performed by the company within the time, they are chargeable with legal negligence.

Though we cannot say, *as matter of law*, that the defendants were bound to erect fences before or while they were constructing their road through any particular land holder's premises, yet we can say, they must exercise their rights with a prudent regard to the rights of others; and if lacking in this duty, they are chargeable with negligence, and must answer for its consequences. What would constitute a prudent regard to the rights of others in one case, might not in another; and each case must rest upon its own peculiar circumstances. No damages were claimed on trial for any injury done by cattle, or for want of fences subsequent to the fall of 1850, but the road was run in September of that year, and not fenced till the last of April, 1851. Damages in this case may have accrued to the plaintiff from a want of a prudent regard to his rights by the defendants; and consequently they may be chargeable with negligence in not fencing their road, even before it was in a running condition. We cannot presume, as matter of law, that damages resulting from such negligence, were included in the land damages assessed by the commissioners, although the final assessment of damages was not till the summer of 1851. Such damages, however, as should result to the land-holder from a proper construction of the road in a prudent manner, and with a due regard to the plaintiff's rights, must be deemed to have been taken into account in the assessment of his land damages, and cannot be made the ground of recovery in this action. The commissioners are to assess such damages " as are likely to arise," that is, from a

proper construction of the road, with a due regard to the rights of others. If, however, it can be shown in this case that damages which had arisen from the negligence of the defendants, in not building the fences in a proper time, were, in fact, included in the final assessment of the land damages, and such damages paid to the plaintiff, it would be a satisfaction of them. If then it is not shown that the damages claimed were in fact included in the land damages, the question of damages should go to the jury under proper instructions, and the right to recover must depend upon the question of negligence in failing to fence the road in a seasonable time, and this must be an open question for the jury, up to the time when, as matter of law, they were bound absolutely to have the road fenced, and an omission to do it after that time, is, in law, negligence.

We think the county court were right in holding that, the defendants were not entitled to recover for the damages occasioned by the workmen on the road, by reason of their leaving the bars down, or from other wrongful acts of the workmen. They were in the employ of men who had taken a job of the railroad company, and were their servants, and not the servants of the company; and we think, at the present day, the law is well settled that, in such a case, you cannot go against the railroad company for the negligence of the servants of the contractors under the company.

There is no ground upon which the plaintiff can claim to recover damages for the injury done his meadow. The case finds, that the plaintiff gave to the workmen who had taken a job on the defendants' railroad leave to take stone from a ledge upon his land; and by implication, a license was also given to the workmen to draw the stone across the plaintiff's land to the railroad, if necessary. The case finds this was necessary, and that no unnecessary damage was done.

As it respects the small piece of land to dress the stone upon, it must be taken that such damages were included in the assessment of damages by the commissioners, provided there was a prudent and proper use of the land for that purpose, and the contrary is not pretended.

The judgment of the county court is reversed, and the cause remanded.