80    102
191   364

80    102
204   ²522

80    102
223   ¹99

# Wray *versus* Evans.

1. Persons not personally interfering with the progress of a work or directing its progress, but contracting with third persons to do it, are not responsible for a wrongful act or for negligence in the performance of the contract, if the act agreed to be done be lawful.

2. The immediate employer of the agent or servant who causes the injury is alone responsible for it; to him only the rule *respondeat superior* applies.

3. There cannot be two superiors severally responsible for the same wrongful act.

4. Wray contracted with a gas company to dig trenches in streets, lay gas-pipes &c., to the satisfaction of the company's engineer, who was to have the right to suspend the work; Wray to bear all losses, &c., which should happen to any person. Wray sub-let to Davis to perform all the work for which Wray had contracted, to the satisfaction of the company's engineer, to be suspended as the engineer might direct; Davis to bear all losses by reason of carrying out the work through negligence, &c.; if he neglected to perform the work to the satisfaction of the engineer, Wray on two days' notice might declare the contract void. A trench was made under the contracts by Davis, who employed the hands and supervised them; defendant had no control over them. Plaintiff fell into the trench and was injured. *Held,* that Wray was not liable to the plaintiff for the injury.

5. Painter *v.* Pittsburg, 10 Wright 213, followed.

November — 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas, No. 2, of *Allegheny county*: Of October and November Term 1875, No. 148.

[Wray v. Evans.]

This was an action on the case, commenced February 6th 1874, by William W. Evans against James T. Wray, for an injury received by the plaintiff from falling into a trench in one of the streets of Pittsburg, made for the purpose of laying gas pipes, under a contract by the defendant with the Pittsburg Gas Company.

On the 12th of May 1873, the defendant entered into a contract with the Pittsburg Gas Company to excavate a trench in Gas street and Second avenue, &c., so that 20-inch pipe might be laid in it, &c., and place in it the pipes, &c., and afterwards fill the earth around the pipes, &c.; the work to be done to the "perfect satisfaction" of the company's engineer; "to be proceeded in or suspended on any portion when required by the engineer," and to be completed by the following 15th day of September. It was further agreed: "That all losses, accidents and damages of whatever kind and from whatever cause, which shall at any time happen to the work or to any person or persons whomsoever, shall be wholly borne and made good by the party of the first part. And should the party of the first part at any time during the progress of the work, refuse or neglect to supply a sufficiency of materials and workmen, the said party of the second part shall have power to provide materials and workmen, after three days' notice in writing being given to finish the said work, and the expenses shall be deducted from the amount of contract."

On the 23d of May 1873, Michael Davis entered into a contract with the defendant, by which Davis agreed to do the work which the defendant had contracted to do for the gas company by the contract above mentioned; the contract was in substantially the same terms as the former one. Davis stipulated that he would do the work to the perfect satisfaction of the company's engineer; the work to be proceeded with or suspended on any portion of the route as the engineer might direct, and to be completed before the 15th of September then next. Davis to receive monthly 80 per cent. of the amount due at the end of each month, "until the satisfactory completion of the whole work, when the balance shall be paid to him."

It was further agreed that "Davis shall bear all losses, damages, fines and recoveries that may happen or be had by reason of the carrying on the said work arising through mistake or negligence or otherwise. * * * Should the said Davis at any time neglect or refuse to carry on or perform the said work to the satisfaction of the engineer of the Pittsburg Gas Company; * * * the said Wray shall have the option, at two days' notice to said Davis, either to declare this agreement on the part of him, the said Wray, no longer binding, but forfeited and made void, or to supply and make good the omissions or non-performances of said Davis, and to deduct the cost thereof from the contract price; * * * that unless the said Davis fully completes and satisfactorily performs

[Wray *v.* Evans.]

the whole of the aforesaid work, on or before the 15th day of September next ensuing, that he will pay the said Wray $25 per day for each day thereafter that the said work is incomplete," &c.

The case was tried, February 11th 1875, before White, J.

The plaintiff testified that on the night of October 9th 1873, he fell into the trench as he was passing down Second avenue and broke his leg; that it was not guarded, and there was no light; the hole into which he fell was where the people walked.

There was other evidence corroborating the plaintiff as to his fall, the condition of the trench, &c.

John Davis testified that Michael Davis was superintending the job; that defendant frequently paid witness on orders from Michael Davis; Davis gave men orders on witness for groceries.

J. H. McElroy, the engineer of the gas company, testified that he was at the work frequently; Davis was so slow witness had frequently to go there; he finally dismissed Davis.

Defendant gave evidence that there were lights and barricades at the trench on the night of the 9th of October 1873; also that Davis employed and paid the workmen.

The defendant testified that the work was commenced by Davis in June or July; witness paid none of the men and had no control over them; the work was done under Davis and under the superintendence of the engineer of the gas works; witness had nothing to do with the work except to pay Davis; he told Davis he must obey the instructions of the engineer; witness had no control of the work after Davis got the contract; witness never gave any orders.

Plaintiff, in rebuttal, gave evidence that there were no lights nor barricades at the trench on the night of the accident.

The following are points of defendant, all which were refused:—

4. If the jury believe from the evidence that at the time of the accident the work was being done by Michael Davis, under the direction of the engineer of the gas works, their verdict should be for the defendant.

5. If the jury believe from the evidence that the negligence, if any, in not putting up barricades and lights at the ditch on the night of the accident, was caused entirely by Michael Davis and the men in his employment, their verdict should be for the defendant.

6. If the jury believe from the evidence that the defendant had assigned or sub-let this contract to Michael Davis, and that at the time of the accident and before it, the defendant had no control over Davis or his men, the verdict should be for the defendant.

The verdict was for the plaintiff for $2735.

The defendant moved for a new trial; the court refused the motion, on condition that the plaintiff would release all damages

above $2000; the plaintiff having so released, judgment was entered on the verdict for the plaintiff for $2000.

The defendant took a writ of error.

He assigned the refusal of his points for error.

*S. M. Raymond* and *C. B. M. Smith*, for plaintiff in error.—The power retained in the defendant's contract with Davis to declare it void in case he failed to comply with the stipulations in defendant's contract with the company, did not impose a liability on defendant which would not exist without it: Reedie *v*. London & N. W. Railway Co., 4 Welsby, H. & G. 244; Quarman *v*. Burnett, 6 M. & W. 499. The defendant having no control over Davis or his men and not standing in the relation of principal, master or employer to him or them, was not responsible for their negligence: Painter *v*. Pittsburg, 10 Wright 213; Sadler *v*. Henloch, 4 E. & B. 570; Rapson *v*. Cubitt, 9 M. & W. 710; Allen *v*. Hayward, 7 Ad. & E. (N. S.) 960; Overton *v*. Freeman, 11 C. B. 867; Peachey *v*. Rowland, 13 Id. 182; Blake *v*. Ferris, 1 Selden 48; Hillyard *v*. Richardson, 3 Gray 349; De Forrest *v*. Wright, 2 Mich. 368; Linton *v*. Smith, 8 Gray 147. Whether the relation be that of master and servant is determined mainly by ascertaining from the contract of employment whether the employer retain the power of controlling the work: Forsyth *v*. Hooper, 11 Allen 419; Wood *v*. Cobb, 13 Id. 58; Coomes *v*. Houghton, 102 Mass. 211; Cuff *v*. Newark & N. J. Railroad Co., 35 N. J. 18; Wright *v*. Holbrook, 52 N. H. 120; Bissel *v*. Torrey, 65 Barb. 188; Hunt *v*. Penna. Railroad Co., 1 P. F. Smith 475; Allen *v*. Williard, 7 Id. 374; Woodward *v*. Webb, 15 Id. 254; Shearman & Redf. on Negligence, sect. 70–85.

The reporter received no paper-book from the defendant in error.

Mr. Justice GORDON delivered the opinion of the court, January 6th 1876.

In the case of Painter *v*. The Mayor, &c., of the City of Pittsburg, 10 Wright 213 (STRONG, J., delivering the opinion of the court), it was held that it is the settled law, both in England and in this country, as ascertained by the decided preponderance of authorities, that persons not personally interfering with or directing the progress of a work, but contracting with third parties to do it, are not responsible for a wrongful act done, or for negligence in the performance of the contract, if the act agreed to be done be lawful.

Hence, it was held, that the city was not responsible for an injury occasioned by the negligence of those who contracted with it to do certain work, or of their agents or servants, and that the remedy for such injury was against the contractors alone.

The conclusions drawn from all the more recent authorities,

including the above, may be formulated thus: the immediate
employer of the agent or servant, who causes the injury, is alone
responsible for such injury; to him alone the rule of *respondeat
superior* applies, and there cannot be two superiors severally respon-
sible.

Let us now recur to the facts of this case. By agreement
between the Pittsburg Gas Co. and James T. Wray, the latter
undertook to dig a trench, in which to lay the gas pipes of said
company, in Gas street and Second avenue, from the works of said
company to the gas holder, in the Fourteenth ward of the city of
Pittsburg. This work was to be done under the supervision of the
company's engineer. It was also part of the contract, that should
Wray, at any time, neglect or refuse to supply a sufficiency of
material or workmen to execute the work properly, the company
might furnish the same, after giving three days' notice, and charge
the same over to Wray.

By a sub-contract, similar in its terms, except that if the work
was not done to the satisfaction of the gas company's engineer,
the contract was to be forfeited on two days' notice, Wray passed
the job to Michael Davis. Each of the contracts contained a cov-
enant that the contractor should be responsible for all losses,
damages, fines and recoveries that might happen or be had by reason
of the carrying on of said work arising through negligence, mistake
or otherwise.

In execution of his contract with Wray, Davis proceeded to dig
the trench along Second avenue, into which, on the night of October
9th 1873, the plaintiff fell and broke his leg. The evidence shows
that Davis employed and supervised the hands who did this work,
and that Wray had no control whatever over them. From the
above statement, it is patent that Davis having contracted in good
faith with Wray to do the work, he was neither the servant nor
agent of Wray, and hence not subject to his authority.

It follows that the doctrine of *respondeat superior* has no appli-
cability to the defendant in this case. As long as Davis continued
to progress with the work, in a manner satisfactory to the engineer
of the gas company, Wray had no more power over the work than
an entire stranger. Had he volunteered advice as to the care
necessary to preserve the public from danger, it would have been
to no purpose, as he had no power to enforce it. The matter was
out of his hands; he could not assume the control of the work until
the sub-contract should be forfeited by non-performance.

Thus, not only authority, but reason forbids that the defendant
should be made responsible for the negligence of one over whom
he had no power, and who was not subject to his direction.

Again, beyond controversy, Davis was, in this case, liable for
the negligence of his employees in the prosecution of the work;
hence, to charge this negligence over to Wray is to make two

[Wray *v.* Evans.]

superiors severally liable for the same injury or misfeasance. This, however, violates the rule already referred to, which negatives such a proposition.

We conclude, therefore, that the court erred in refusing to affirm the plaintiff's sixth point, and for this reason the judgment is reversed and a *venire facias de novo* is awarded.