CARTER *v.* THE BERLIN MILLS CO.

The liability of a person for damages arising from the negligence or misfeasance of another, in the performance of a lawful contract, is confined, in its application, to the relation of master and servant, or principal and agent, and does not extend to cases of independent contracts not creating those relations, and where the employer does not retain the control over the mode and manner of executing the work under the contract.

The immediate employer of the agent or servant who causes the injury is alone responsible for it: to him only the rule *respondeat superior* applies.

CASE, to recover damages for injuries to the plaintiff's land, occasioned by flowage. Facts found by a referee.

The plaintiff is the owner of lands situated on both sides of Clear Stream, in the town of Errol. Clear Stream, where it divides these lands, is a public highway, for the purpose of driving logs in the season of the year when such business is usually done, and in times of high water. The defendants own timber lands on the stream, above the plaintiff's lands. They also own dams, above the plaintiff's premises, on the stream, built for the purpose of holding back the water, and then letting it out to assist in driving logs down the stream when the ordinary flow of the water is insufficient for that purpose.

In the fall of 1873 the defendants made a contract with J. A. & E. D. Thurston, whereby the Thurstons, for a stipulated price per thousand feet, were to cut from the defendants' timber lands certain large quantities of timber, and deliver the same at the mouth of Clear Stream, where the stream empties into the Androscoggin. The Thurstons were at liberty to use the defendants' dams if they wished to.

In fulfilling their contract, the Thurstons used the defendants' lower dam by shutting the gates at night and opening them in the morning, until the rear of their drive had passed the plaintiff's premises. The referee found that the plaintiff had sustained damage, by an unreasonable use of the stream, through the operation of the defendants' dams by the Thurstons, but that the defendants had nothing to do with cutting, hauling, or driving the timber down the stream, nor with occasioning the damage complained of, unless they are liable because of their ownership of the dams and of the land where the timber was cut.

The court ordered judgment for the defendants, and the plaintiff excepted.

*Aldrich & Parsons* and *Shurtleff,* for the plaintiff.

*Ray & Drew,* for the defendants.

FOSTER, J. Every person who inflicts an injury through his own negligent or wrongful act is responsible in damages for its consequences.

This rule applies to all servants and agents executing the orders or the business of their masters or principals, as well as to the masters and principals themselves; but, as the servants or agents are often persons unable to make compensation to the parties injured by their acts, the law properly holds the master or employer responsible for the act of his servant or agent, whether the work is done by a domestic servant or day-laborer, or by a person who works by the job or piece, and contracts to do the work for a specific sum;—provided, always, that the workman is an ordinary laborer, personally engaged in the execution of the work, acting under the control of the master, and not a contractor, exercising an independent employment, and selecting his own servants and workmen for the performance of the work.

The liability of any one other than the person actually doing the act from whence the injury results, proceeds on the maxim *qui facit per alium, facit per se.* But, although a person has ordered or directed a particular thing to be done, yet if he does not employ his own servants and workmen to do it, but intrusts the execution of the work to a person who exercises an independent employment, and has the immediate dominion and control over the workmen engaged in the work, he is not responsible for injuries done to third persons from the negligent execution of the work, unless a nuisance is thereby created and continued on his own premises. Addison on Torts (4th Eng. ed.) 411–413.

The maxim, *respondeat superior,* depends on the presumed control implied by the relation between the parties. It therefore does not extend to the case of an independent contractor, to whom the execution of a work is committed without any control or power of direction

being reserved on the part of the employer as to the manner of executing the work. In such cases the law makes the contractor alone responsible for damage done by him in the execution of the work, the maxim *respondeat superior* applying only, to the contractor, for the acts of his servants. But the rule which thus exempts the employer does not apply to cases where the injurious act is the very act which the contractor was employed to do, or a necessary consequence of the work committed to him. Campbell on Negligence, *s.* 75.

Moreover, if the contractor personally interferes and gives directions to the subcontractor, or to the workmen employed by him, he would be responsible for the orders given ; but he cannot be charged simply on the ground of his filling the character of contractor. Addison on Torts (4th Eng. ed.) 415.

These general principles are illustrated by very numerous cases in the courts on both sides of the Atlantic. We need refer to but a few of them.

In *Overton* v. *Freeman*, 11 C. B. 867, the defendants had contracted to pave certain portions of the parish of St. Pancras, and entered into a sub-contract with one Warren to pave the street in question. Warren employed laborers to work under him ; and certain curb-stones were so placed in the pathway by these men as to obstruct the same, "and to constitute a public nuisance," in consequence of which the plaintiff fell over them and sustained an injury. *Held*, that Warren was responsible, and not the defendants. MAULE, J., said,—"The relation of master and servant has no existence in a case like this. * * I think the present case falls within the principle of those authorities which have decided that the subcontractor, and not the person with whom he contracts, is liable, civilly as well as criminally, for any wrong done by himself or his servants in the execution of the work contracted for." CRESWELL, J., concurring, said,—"If the act contracted to be done would itself have been a public nuisance, of course the defendants would have been responsible ; but the circumstance of the materials being supplied by the defendants and brought to the spot in their carts, makes no difference"—citing *Knight* v. *Fox*, 5 Exch. 721. See, also, *Reedie* v. *The London & North-Western Railway Co.*, 4 Exch. 244 ; *Peachey* v. *Rowland*, 13 C. B. 182 ; *Steel* v. *The South-Eastern Railway Co.*, 16 C. B 550 ; *Sérandat* v. *Saïsse*, L. R., 1 P. C. 152 (affirming the judgment of the supreme court at Mauritius, on appeal to the Privy Council), whereby it appears that the French law, in its application of the maxim *respondeat superior*, is in harmony with the English law, the Code Napoleon providing,— "Les maîtres et commettants sont responsables du dommage causé par leur domestiques et préposés dans les fonctions auxquelles ils les ont employés." In their interpretation of the article, the French lawyers appear to have qualified the doctrine so far as regards the *commettant* and *préposé*, by saying that to make the *commettant* responsible for the negligence of the *préposé*, the latter must be acting "sous les ordres, sous la direction et la surveillance du commettant."

The general principles applicable to cases of this character, as declared in the cases already referred to, are very clearly recognized by the American courts and jurists.

Mr. Chief-Justice BIGELOW has suggested the distinction upon which, according to his understanding, all the cases turn : " If the person employed to do the work carries on an independent employment, and acts in pursuance of a contract with his employer, by which he has agreed to do the work on certain specified terms, in a particular manner and for a stipulated price, then the employer is not liable : the relation of master and servant does not subsist between the parties, but only that of contractor and contractee.  The power of directing and controlling the work is parted with by the employer and given to the contractor.  But, on the other hand, if work is done under a *general employment*, and is to be performed for a reasonable compensation or for a stipulated price, the employer remains liable, because he retains the right and power of directing and controlling the time and manner of executing the work, or of refraining from doing it if he deems it necessary or expedient." *Brackett* v. *Lubke*, 4 Allen 138.

The supreme court of Michigan have undertaken to lay down some specific rules for the application of the maxim.  It applies, they say,— " 1. Where the relation of master and servant, in its most familiar signification, exists.  2. Where the *superior* is in possession of fixed property (as real estate), upon which some service is to be performed ; for in such cases the use of the property is confined by law to himself, and he should take care that that use and management works no injury to others.  3. Where, although a special contract be entered into respecting personal property, or services, which does not create the relation of master and servant, as more familiarly understood, yet the principal retains a supervising power over the execution of the contract, and the actual or constructive possession of the property remains in him."  " It does not apply," they say, " to those cases where,—1. Property is entrusted to the care and management of those who are not the servants of the owner, but who exercise employments on their own account, with respect to the care and management of the goods and property of any person who may choose to entrust them to them, to be dealt with according to that employment.  2. Where a contract is made with another in respect of services upon property, when no power of direction or supervision is reserved by the principal, but the entire discretion as to the mode of execution of the contract, together with control of the property, is confided to the employé.  3. In case of a like contract, the contract prescribing the mode of its execution, where possession of the property is surrendered to the employé to enable him to execute such contract.  4. Where the relation of principal contractor and subcontractor exists, in relation to works of public improvement, conducted under a public grant, where, from considerations of public policy and the very nature of the employment, each subcontractor is regarded as a principal, pur-

suing an independent calling, and responsible for the acts of those in his immediate employment." *Moore* v. *Sanborne*, 2 Mich. 519, 529.

The facts of the case last cited were very similar to those under our present consideration. It was case, for injury to the plaintiff, resulting from jams of logs occasioned by the obstruction of Pine river, a public highway. The defendants made a bargain with their employés to cut all the logs the defendants had on certain lands, and to deliver them to the defendants at the mouth of the river,—the defendants having no interest in the running of the logs until they reached the point of delivery, nor rendering any assistance, pecuniary or otherwise, in the cutting or running of the logs. It was considered that the relation of master and servant did not exist, and that the employé alone was liable for any injury occasioned to others in performance of his contract.

The only distinction between that case and the present seems to be, that in the former it does not appear whether or not the dams of the defendant were used in the running of the logs.

In *Cincinnati* v. *Stone*, 5 Ohio St. 38, it was declared that the principle of *respondeat superior* does not apply to cases of independent contracts not creating the relation of principal and agent, and where the employer does not retain the control over the mode and manner of the performance of the work under the contract. To the same effect is *Gwathney* v. *The Little Miami Railroad Co.*, 12 Ohio St. 92.

In *Corbin* v. *The American Mills*, 27 Conn. 274, it is said,—to render the employer liable, "the employé must be acting at the time strictly in the place of the employer, in accordance with and representing the employer's will and not his own ; and the business must be strictly that of the employer, and not in any respect the employé's."

In *Eaton* v. *European & North American Railway Co.*, 59 Me. 520, APPLETON, C. J., said,—"When the contract is to do an act in itself lawful, it is presumed it is to be done in a lawful manner. * * * If the injury was the natural result of the work contracted to be done, and it could not be accomplished without causing the injury, the person contracting for doing it would be held responsible."

In *Pawlet* v. *The Rutland & Washington Railroad Co.*, 28 Vt. 297, it was said,—"Though it may be assumed that a public nuisance had been committed by the servants of the subcontractors, and a particular injury has resulted therefrom to the plaintiffs, and for which the town [of Pawlet] had been compelled to make satisfaction, yet we cannot discover any privity existing between the defendants and the employés of the subcontractor. The contract was for a lawful purpose, and in no way involved the commission of a wrong, and the employés of the subcontractor were not the servants of the defendants, nor under their control."

To the same effect is *Clark* v. *The Vt. & Canada Railroad Co.*, 28 Vt. 103.

In *Schular* v. *The Hudson River Railroad Co.*, 38 Barb. 653, where D. & M. had an absolute contract with the defendants to draw the defendants' cars over a certain portion of the road, to furnish the horses and drivers for that purpose, and to assume the entire control of the work, it was held that the defendants were not liable for the negligent acts of the servants of D. & M., and that the right of the defendants to control the contractor, or to terminate the contract if the work was not done to the satisfaction of the defendants, does not alter the liability, according to the decision of the court of appeals in *Pack* v. *The Mayor, &c., of N. Y.*, 8 N. Y. 222. The fact, that the right to use an instrument not in its nature dangerous (as, in the case before us, the defendants' dams) was given, under a contract by which it is to be used in performing work for the owner upon his premises, does not change the liability. *King* v. *N. Y. C. & H. R. R. Co.*, 66 N. Y. 181. See, also, *Kelly* v. *Mayor, &c., of N. Y.*, 11 N. Y. 432; *Blake* v. *Ferris*, 5 N. Y. 48; *Slater* v. *Mersereau*, 64 N. Y. 138; *Callahan* v. *B. & M. River R. R.*, 23 Iowa 564; *Cuff* v. *Newark & N. Y. R. R. Co.*, 6 Vroom 17; *Scammon* v. *Chicago*, 25 Ill. 424; *The Prairie, &c., Co.* v. *Doig*, 70 Ill. 52; *Hale* v. *Johnson*, 80 Ill. 185; *Painter* v. *Mayor, &c., of Pittsburgh*, 10 Wright 213; *Wray* v. *Evans*, 80 Pa. 102: Shearman & Redfield on Negligence (2d ed.), s. 81; *Hilliard* v. *Richardson*, 3 Gray 352.

In *Lowell* v. *B. & L. Railroad*, 23 Pick. 24, cited by the plaintiff, an accident occurred through the negligence of a servant of a contractor employed by the defendants to build a portion of their railroad, and the court sustained the plaintiffs' claim on the authority of *Bush* v. *Steinman*, 1 Bos. & Pul. 404, which was declared to be "fully sustained by the authorities, and by well established principles,"— although (says Judge THOMAS, in *Hilliard* v. *Richardson*) the decision of *Lowell* v. *The Railroad* did not involve the correctness of the ruling in *Bush* v. *Steinman*. At considerable length, Judge THOMAS considers the case of *Bush* v. *Steinman*, and the authorities upon which that case was based, and declares, as other courts pretty generally have since declared, that *Bush* v. *Steinman* does not stand well upon authority or reason, and is no longer revered in Westminster Hall,—is no longer law in England. "If ever a case can be said to have been overruled, directly and indirectly, by reasoning and by authority, this has been." THOMAS, J., in *Hilliard* v. *Richardson*, 3 Gray 349, 363. See *Wright* v. *Holbrook*, 52 N. H. 120.

In *Lowell* v. *The Railroad*, the accident occurred from the negligence of a servant of the corporation, acting under their express orders. The case stands perfectly well upon its own principles, but is not applicable to the case before us.

So, too, the case of *Darmstaetter* v. *Moynahan*, 27 Mich. 188, cited by the plaintiff, if applicable at all, does not sustain the plaintiff's argument. The case expressly finds that "the work was done *by himself* [the defendant] by means of Kehl, *who was his instrument.*" "The arrangement neither implied nor contemplated that Kehl should

be master of the possession." The defendant there employed Kehl to fill his ice-house, and an injury was sustained by Kehl's unlawfully and unnecessarily incumbering the street with blocks of ice. The decision is governed by the rules applying to agency.

Of the same character are the cases of *The Chicago, St. Paul & Fond du Lac R. R.* v. *Mc Carthy,* 20 Ill. 388, and *Detroit* v. *Corey,* 9 Mich. 165.

*Carman* v. *The Railroad,* 4 Ohio 399, also cited by the plaintiff, holds, that before a case can be made for the application of the principle of *respondeat superior,* not only the relation of master and servant must have existed, but it must appear that the servant, while engaged in the business of the master, has done some act or omitted some duty, neither directed nor authorized by the master, to the injury of a third person.

And *Mc Camus* v. *The Gas-Light Co.,* 40 Barb. 380, in which the defendant was charged, "goes upon the principle," says the court, "of *qui facit per alium, facit per se,* from which the rule of *respondeat superior* arises; but this rule does not apply, and the liability does not exist, where it can be shown that those engaged in executing the work, and by whose carelessness or want of skill the injury was occasioned, are not the servants or subordinates of him for whose benefit the work is being performed, but are acting under a contract or employment which leaves the contractor or employé free to exercise his own judgment as to the means and assistants to be employed in accomplishing the work, without being subject to control in these respects by the party for whom the work is being done."

If the decision in *Stone* v. *The Cheshire Railroad,* 19 N. H. 427, adopts the overruled doctrine of *Bush* v. *Steinman,* to that extent it is no longer law in this state. *Wright* v. *Holbrook,* 52 N. H. 120. But *Stone* v. *The Railroad* required no support from the doctrine of *Bush* v. *Steinman,* because, although the injury in *Stone* v. *The Railroad* was occasioned by the servants of the subcontractors, yet Tilton, the chief engineer of the company, " had the general supervision of the work done upon the road; he and the engineers under him laid out the work, and saw that it was done according to the contract; and if they found anything going wrong, they attended to it, and had it corrected;" and, says Judge GILCHRIST (p. 441), there was no "independent employment exercised by the contractors."

The Thurstons exercised a purely independent employment. There was no privity between the defendants and the Thurstons. *Pawlet* v. *The Railroad,* before cited. The circumstance of the dams being furnished by the defendants makes no difference. They were not *per se* a nuisance—*Overton* v. *Freeman, ante;* and it by no means follows, that because the dams were capable of being so used as to constitute a nuisance, or were capable of an improper, a negligent, or a mischievous use, therefore an injury to the plaintiff was a necessary or a natural consequence of a proper use of the dams, nor that the

Thurstons might not have fulfilled their contract with the defendants without detriment to the plaintiff, and without any improper management with respect of the dams; much less that the defendants, by giving the Thurstons permission to use the dams, authorized or sanctioned any improper management of them.

The plaintiff's injury was not the natural result of the work contracted to be done. A reasonable use of the dams for proper purposes, and a reasonable use of the stream for the transportation of logs, were lawful, and the authority conferred by the defendants was, to execute the contract by a proper and reasonable use of all its means and appliances. When a contract is to do an act in itself lawful, it is presumed it is to be done in a lawful manner. *Eaton* v. *European & N. A. Railway*, before cited.

In the circumstances of this case, the Thurstons may, perhaps, be responsible, but these defendants are not.

*Exceptions overruled.*

BINGHAM, J., did not sit.