**WESTWOOD PHARMACEUTICALS, INC., Plaintiff,**

v.

**NATIONAL FUEL GAS DISTRIBUTION CORPORATION, as Successor in Interest to Iroquois Gas Corporation, Defendant.**

No. CIV–88–1122C.

United States District Court, W.D. New York.

June 19, 1991.

Eckert, Seamans, Cherin & Mellott (Daniel M. Darragh, of counsel), Pittsburgh, Pa., for plaintiff.

Phillips, Lytle, Hitchcock, Blaine & Huber (Robert E. Glanville, of counsel), Buffalo, N.Y., for defendant.

CURTIN, District Judge.

## BACKGROUND

In a decision and order dated May 21, 1990, the court held, among other things, that defendant National Fuel Gas Distribution Corporation ("National Fuel") had raised a triable issue on the third-party defense it had asserted under § 107(b)(3) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607(b)(3). *See* 737 F.Supp. 1272, 1285–86 (W.D.N.Y.1990). *See also id.* at 1277–79. In so holding, the court rejected the claim by plaintiff Westwood Pharmaceuticals, Inc. ("Westwood"), that the defense was not available to National Fuel because its sale of the site at issue to Westwood rendered the parties contractually related within the meaning of § 107(b)(3). The court ruled that such a construction of the statute would effectively render its "in connection with" language superfluous. *Id.* at 1285–86. Westwood has moved for reconsideration of that holding, requesting that the court consider the impact of CERCLA § 101(35)(C).

The facts of this case were set forth in the court's earlier decision, and they shall not be repeated in detail here. Rather, for purposes of the present motion, the relevant facts shall merely be summarized briefly.

The site at issue was purchased in 1925 by National Fuel's predecessor in interest, which conducted gas-manufacturing and storage operations on the land through 1951, and which for several years thereafter continued to use the location for gas compression and storage. During the course of these operations, the company placed or otherwise used at the site various underground pipes and structures. Westwood purchased the site in 1972, and dur-

ing subsequent construction activities and associated soil testing it discovered various subsurface contaminants, the response costs for which Westwood claims National Fuel is liable. National Fuel contends that if, in fact, it placed hazardous substances at the site, any such substances that were not eventually removed from the premises for off-site use or disposal were left inside secure subsurface receptacles. National Fuel further contends that the structural integrity of these subsurface receptacles left at the site would not have been breached and, therefore, hazardous substances would not have escaped but for the construction activities of Westwood. According to National Fuel, it thus is entitled to assert a third-party defense under § 107(b)(3).

## DISCUSSION

■ Section 107(a) of CERCLA establishes four classes of persons liable for costs associated with responding to a release or threatened release of a hazardous substance:

(1) the owner and operator of a vessel or a facility, as those terms are defined by CERCLA, *see* 42 U.S.C. §§ 9601(9), 9601(25); [1]

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of;

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances; and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person.

**1.** Section 101(9) of CERCLA broadly defines the term "facility" to include "any property at which hazardous substances have come to be located."

42 U.S.C. § 9607(a). *See United States v. Hooker Chemicals & Plastics Corp.*, 739 F.Supp. 125, 127 (W.D.N.Y.1990); *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1043 & n. 16 (2d Cir.1985).

Section 107(b) sets forth the statutory defenses to liability under § 107(a). It provides in relevant part:

There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—

. . . .

(3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs *in connection with a contractual relationship*, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions . . . .

42 U.S.C. § 9607(b)(3) (emphasis added). Through § 101(f) of the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Congress added § 101(35) to CERCLA. *See* 42 U.S.C. § 9601(35) (codifying Pub.L. No. 99–499, § 101(f), 100 Stat. 1613, 1616 (1986)). Section 101(35) established the so-called "innocent-landowner exception," which is sometimes referred to as the "innocent-landowner defense" or the "innocent-purchaser defense." That section provides:

*State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1043 n. 15 (2d Cir.1985).

(A) The term "contractual relationship", [sic] for the purpose of section 9607(b)(3) of this title includes, but is not limited to, land contracts, deeds or other instruments transferring title or possession, *unless* the real property on which the facility concerned is located was acquired by the defendant after the disposal or placement of the hazardous substance on, in, or at the facility, and one or more of the circumstances described in clause (i), (ii), or (iii) is also established by the defendant by a preponderance of the evidence:

(i) At the time the defendant acquired the facility the defendant did not know and had no reason to know that any hazardous substance which is the subject of the release or threatened release was disposed of on, in, or at the facility.

(ii) The defendant is a government entity which acquired the facility by escheat, or through any other involuntary transfer or acquisition, or through the exercise of eminent domain authority by purchase or condemnation.

(iii) The defendant acquired the facility by inheritance or bequest.

In addition to establishing the foregoing, the defendant must establish that he has satisfied the requirements of section 9607(b)(3)(a) and (b) of this title.

42 U.S.C. § 9601(35)(A) (emphasis added). Section 101(35) also provides the following:

(C) Nothing in this paragraph or in section 9607(b)(3) of this title shall diminish the liability of any previous owner or operator of such facility who would otherwise be liable under this chapter. Notwithstanding this paragraph, if the defendant obtained actual knowledge of the release or threatened release of a hazardous substance at such facility when the defendant owned the real property and then subsequently transferred ownership of the property to another person without disclosing such knowledge, such defendant shall be treated as liable under section 9607(a)(1) of this title and no defense under section 9607(b)(3) of this title shall be available to such defendant.

(D) Nothing in this paragraph shall affect the liability under this chapter of a defendant who, by any act or omission, caused or contributed to the release or threatened release of a hazardous substance which is the subject of the action relating to the facility.

42 U.S.C. § 9601(35)(C), (D).

The parties agree that the innocent-landowner exception was designed to relieve, under limited circumstances, current owners of contaminated property from liability under § 107(a)(1). Westwood argues, however, that the first sentence of § 101(35)(C) explicitly precludes a defendant falling within § 107(a)(2), which it asserts National Fuel to be, from invoking the third-party defense set forth in § 107(b)(3).

First, Westwood's restrictive reading of the purpose behind the first sentence of § 101(35)(C) is undermined by the second sentence of that section, which, as noted above, provides:

Notwithstanding this paragraph, if the defendant obtained actual knowledge of the release or threatened release of a hazardous substance at such facility when the defendant owned the real property and then subsequently transferred ownership of the property to another person without disclosing such knowledge, *such defendant shall be treated as liable under section 9607(a)(1) of this title and no defense under section 9607(b)(3) of this title shall be available to such defendant.*

42 U.S.C. § 9601(35)(C) (emphasis added). The second sentence of § 101(35)(C) thus makes abundantly clear that had Congress intended in the immediately preceding sentence to place a particular statutory defense beyond the reach of a particular class of defendants, it knew precisely how to do so. The fact that Congress made its intent so apparent in the second sentence provides compelling evidence that its failure to use parallel language in the first sentence reveals a different congressional intent.

Second, it simply does not make sense that Congress would choose virtually to bury in § 101(35)(C) such a fundamental change in the scope of § 107(b)(3) instead

of simply making the appropriate change in the language of § 107(b)(3) itself. This is particularly so in light of the fact that SARA made so many direct changes in other portions of § 107 of CERCLA.

Third, a more in-depth examination of the language of §§ 101(35) and 107(b)(3) provides further support for the conclusion that the first sentence of § 101(35)(C) was not intended to foreclose § 107(a)(2) defendants from asserting a third-party defense.

In order to understand the import of the first sentence of § 101(35)(C), the overall context of the innocent-landowner exception must be considered. The "in connection with" language contained in § 107(b)(3) places a burden on defendants who are contractually related to an allegedly responsible third party that is not placed on defendants who are not contractually related to the third party. The "in connection with" language thus limits use of the § 107(b)(3) third-party defense. Viewed in context, the innocent-landowner exception thus provides an exemption from the "in connection with" limitation: under certain circumstances, it will lift the extra burden normally placed on defendants who are contractually related to the allegedly responsible third party, thereby putting them in the same position as defendants who are not. Lifting that burden, however, will not settle the issue of third-party causation since a defendant will still have to satisfy the other requirements of § 107(b)(3) in order to avoid liability under § 107(a). As stated in the Conference Report on SARA, the new definition of "contractual relationship" contained in CERCLA § 101(35)(A) was

> intended to clarify and confirm that under limited circumstances landowners, who acquire property without knowing of any contamination at the site and without reason to know of any contamination (or as otherwise noted in the amendment) may have a defense to liability under section 107 and therefore should not be held liable for cleaning up the site if such persons satisfy the remaining requirements of section 107(b)(3). A person who acquires property through a land contract or deed or

> other instrument transferring title or possession that meets the requirements of this definition may assert that an act or omission of a third party *should not be considered to have occurred in connection with a contractual relationship as identified in section 107(b) and therefore is not a bar to the defense.*

H.R.CONF.REP. NO. 962, 99th Cong., 2d Sess. 186–87, *reprinted in* 1986 U.S.CODE CONG. & ADMIN.NEWS 3279–80 (emphasis added).

It is thus clear that § 101(35)(A) must be read in conjunction with § 107(b)(3). That, in turn, appears to be one of the keys to understanding the parameters of the first sentence of § 101(35)(C). It appears that what Congress intended by that sentence was simply to underscore that the innocent-landowner exception was designed to apply only to current owners of property—that is, § 107(a)(1) defendants—who otherwise would not qualify for the § 107(b)(3) defense. In other words, § 101(35)(A) provides an exception for § 107(a)(1) defendants who are innocent landowners yet, but for the newly enacted exception, would be held liable under CERCLA. The first sentence of § 101(35)(C) indicates that, by contrast, the innocent-landowner exception is not available to § 107(a)(2) defendants "who would otherwise be liable" precisely because they are not "innocent" within the meaning of § 101(35)(A), having previously owned or operated a facility at a time when a hazardous substance was disposed of at the facility. Thus, if a § 107(a)(2) defendant is related to a third party by a land contract, deed or other instrument transferring title or possession, the defendant is contractually related to the third party within the meaning of § 107(b)(3), notwithstanding any provision of § 101(35). Therefore, the § 107(a)(2) defendant's assertion of a third-party defense—unlike the § 107(a)(1) defendant's assertion of a third-party defense—is at all times subject to the "in connection with" limitation contained in § 107(b)(3). In short, it appears that the first sentence of § 101(35)(C) limits only the application of the innocent-landowner exception, rather than both the innocent-

landowner exception *and* the balance of the third-party defense.

The impact of this interpretation of § 101(35) on the present case can be stated simply. National Fuel is not invoking the innocent-landowner exception; nor does it dispute Westwood's contention that it rather than National Fuel is the only party that could even attempt to qualify for the innocent-landowner exception under the facts of the present case. Rather, National Fuel is asserting the third-party defense as it is otherwise provided by § 107(b)(3). National Fuel thus seeks to establish that, if it is otherwise found to be liable under § 107(a)(2), it should nonetheless escape liability because Westwood was solely responsible for any release or threatened release of hazardous substances that occurred, and because Westwood's acts or omissions in this regard did not occur "in connection with" the deed between Westwood and National Fuel.

In support of its position, Westwood, obviously presuming it can establish that National Fuel disposed of hazardous substances at the site at issue, reasons that

> [i]t would be fundamentally inconsistent and illogical to conclude that the owner and operator at the time of disposal (as well as the generator of the hazardous substances), such as National Fuel in this instance, could invoke § 107(b)(3), but an owner who fell into the category described in the second sentence of § 10[1](35)(c) would be treated as the current owner or operator *and not* be entitled to invoke § 107(b)(3).

Item 39 at 7 (emphasis supplied).[2] But while Westwood may argue that it would have been unfair for Congress to have allowed such a result, that result is, in fact, neither inconsistent with the language of CERCLA nor illogical in light of the statute's overall goals. Section 107(b)(3) provides that an owner or operator of a facility at the time of disposal can avoid liability by establishing that a third party was solely responsible for the release or threatened release of a hazardous substance. Section 101(35)(C) provides that even a party otherwise qualifying for the innocent-landowner exception will be held liable to the same extent that a "non-innocent" owner or operator would be held liable under § 107(a)(1) if, upon transferring property, the party fails to divulge his or her knowledge of the release or threatened release of a hazardous substance on the property. In both scenarios, Congress focused liability on the release or threatened release of a hazardous substance: in the first, Congress decided to place liability on the party whose act or omission was the sole cause of the release or threatened release; in the second, Congress chose to place liability on the person who learned of but failed to disclose the release or threatened release.[3] Congress's intent to so focus liability is also reflected in § 101(35)(D), which provides that nothing in § 101(35) "shall affect the liability under this chapter of a defendant who, by any act or omission, caused or contributed to the release or threatened release of a hazardous substance which is the subject of the action." 42 U.S.C. § 9601(35)(D).[4] Moreover, that Congress chose in the second scenario described above to impose liability on a party who, although an innocent purchaser under the terms of § 101(35)(A) when originally acquiring the land, fails to disclose his or her knowledge of a release or threatened release of a hazardous substance on that property when transferring ownership to

---

**2.** Even if its interpretation of § 101(35)(C) were correct, Westwood would not be entitled to summary judgment since it has failed to establish that there is no genuine issue of material fact as to whether National Fuel disposed of a hazardous substance at the site within the meaning of CERCLA § 101(29), 42 U.S.C. § 9601(29) (incorporating the definition contained in 42 U.S.C. § 6903(3)). *See* 737 F.Supp. at 1278–79, 1285.

**3.** In the second scenario, the party responsible for the release or threatened release would, of course, also be liable.

**4.** Section 101(35)(D) is consistent with § 107(b)(3), as the latter section allows a defendant to assert a third-party defense only if the defendant can establish that the release or threatened release of a hazardous substance was caused *solely* by an act or omission of a third party.

another, is hardly incompatible with the broad remedial goals of CERCLA.

Again presuming it can establish that National Fuel disposed of hazardous substances, Westwood further argues:

> Certainly the owner and operator of a facility at the time of disposal who was also the generator and disposer of the hazardous substances would have to be considered to be one who caused or at least contributed to the release or threatened release of a hazardous substance by virtue of the placement of the hazardous substance at, in or on the facility. *No release could have occurred but for the disposal of the hazardous substances at the site by National Fuel.*

Item 39 at 8 (emphasis added). But that reasoning would apply equally to defendants falling within §§ 107(a)(3) and 107(a)(4); that is, it could as readily be argued that, but for the activities of parties falling within §§ 107(a)(3) and 107(a)(4), a release or threatened release of a hazardous substance would not have been possible at a given site. Westwood offers no reason why Congress would choose to place the third-party defense beyond the reach of defendants falling within § 107(a)(2), but leave it available to those falling within §§ 107(a)(3) and 107(a)(4). To the extent that Westwood may be suggesting that Congress considered generator-disposers more culpable than other § 107(a) defendants, the court notes that generator-disposers are covered by § 107(a)*(3)*. *See, e.g., City of New York v. Exxon Corp.*, 744 F.Supp. 474, 480 (S.D.N.Y.1990); *Violet v. Picillo*, 648 F.Supp. 1283, 1288 (D.R.I.1986); *United States v. Wade*, 577 F.Supp. 1326, 1332–33 (E.D.Pa. 1983). Thus, under that rationale, it would have made more sense for Congress to place the third-party defense beyond the reach of § 107(a)(3) defendants, since § 107(a)(2) imposes liability even if the previous owner or operator of a facility was neither a generator nor a disposer of hazardous substances.

National Fuel argues that § 107(b)(3) provides, in effect, an "innocent seller" defense that it, as an intervening owner, is entitled to assert. National Fuel's argument is supported by *State of New York v. Shore Realty Corp.*, 759 F.2d 1032 (2d Cir.1985). In that case, the United States Court of Appeals for the Second Circuit stated:

> Congress intended to cover different classes of persons differently. Section 9607(a)(1) applies to all current owners and operators, while section 9607(a)(2) primarily covers prior owners and operators. Moreover, section 9607(a)(2)'s scope is more limited than that of section 9607(a)(1). *Prior owners and operators are liable only if they owned or operated the facility "at the time of disposal of any hazardous substance"; this limitation does not apply to current owners. . . .*

*Id.* at 1044 (emphasis added). Thus, an "innocent" intervening owner, which National Fuel claims to be, may transfer property without incurring liability unless it, as the intervening owner, "obtained actual knowledge of the release or threatened release of a hazardous substance at such facility when the [intervening owner] owned the real property and then subsequently transferred ownership of the property to another person without disclosing such knowledge." 42 U.S.C. § 9601(35)(C). Under those circumstances, the intervening owner "shall be treated as liable under section [107(a)(1)] of [CERCLA] and no defense under section [107(b)(3)] of [CERCLA] shall be available to such defendant." *Id.* Indeed, it would make little sense for Congress to provide a defense for an "innocent" land purchaser but fail to provide corresponding protection for that same landowner when he or she becomes an "innocent" seller—that is, when he or she transfers the property without ever having learned of a release or threatened release of a hazardous substance thereon, or, having learned of such a release or threatened release, discloses such knowledge to the person to whom the land is transferred.

National Fuel maintains that if Westwood can establish that it disposed of hazardous substances at the site at issue and then failed to remove them for off-site use or disposal, it, in turn, can demonstrate

that any release or threatened release of those substances was caused solely by acts or omissions of Westwood, and that those acts or omissions did not occur "in connection with a contractual relationship" existing directly or indirectly with Westwood. While it is painfully apparent that neither CERCLA nor SARA can be accused of displaying excessive statutory clarity, the court sees nothing in either § 107(b)(3) or § 101(35) that precludes National Fuel as a matter of law from presenting its third-party defense.

The court previously held that not every contractual relationship precludes a former owner from invoking § 107(b)(3), and that National Fuel was entitled, therefore, to at least present proof that Westwood's construction activities at the site were not undertaken "in connection with" its contractual relationship with National Fuel. 737 F.Supp. at 1286. Westwood has not convinced the court that that ruling was erroneous. *See Shapiro v. Alexanderson,* 743 F.Supp. 268, 271 (S.D.N.Y.1990). Westwood's motion for reconsideration is, consequently, denied.

So ordered.