WESTWOOD PHARMACEUTICALS,
INC., Appellant,

v.

NATIONAL FUEL GAS DISTRIBUTION
CORPORATION, Appellee.

No. 988, Docket 91–9157.

United States Court of Appeals,
Second Circuit.

Argued Feb. 11, 1992.

Decided March 11, 1992.

As Amended June 23, 1992.

Daniel M. Darragh, Pittsburgh, Pa. (Margaret N. Strand and Martha M. Harris, on the brief), for appellant Westwood Pharmaceuticals, Inc.

Robert E. Glanville, Buffalo, N.Y., for appellee National Fuel Gas Distribution Corp.

Before: FEINBERG, TIMBERS, and MINER, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Westwood Pharmaceuticals, Inc. (Westwood) appeals from an order entered June 19, 1991 in the Western District of New York, John T. Curtin, *District Judge,* denying Westwood's motion for reconsideration of that portion of an order entered in the same court on May 21, 1990 denying Westwood's motion for summary judgment on its claim that appellee National Fuel Gas Distribution Corporation (National Fuel) is liable in Westwood's action brought pursuant to §§ 107(a)(2), 113(f) and 113(g) of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9607(a), 9613(f) and 9613(g) (1988) as amended by the Superfund Amendments and Reauthorization Act, Pub.L. No. 99–499, 100 Stat. 1613 (1986).

On October 14, 1988, Westwood commenced this action against National Fuel seeking to recover costs incurred in investigating and remedying chemical contamination at certain premises in Buffalo it had purchased from National Fuel's predecessor in interest, Iroquois Gas Corporation (Iroquois). Westwood moved for partial summary judgment on the liability issues presented by its CERCLA action. After the district court denied Westwood's motion for summary judgment, Westwood moved for reconsideration of its order. The district court on June 19, 1991 denied Westwood's motion for reconsideration. On August 6, 1991, at the request of Westwood, the district court amended its order to include certification for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (1988). On November 6, 1991, a panel of our Court granted Westwood's petition for leave to appeal pursuant to § 1292(b).

On appeal, Westwood contends (1) that the mere existence of a contractual relationship, without more, between it and National Fuel precludes National Fuel from invoking the third-party defense of CERCLA § 107(b)(3); and, alternatively, (2) that CERCLA § 101(35)(C), 42 U.S.C. § 9601(35)(C), precludes National Fuel from raising the third-party defense provided for in § 107(b)(3).

For the reasons that follow, we affirm the order of the district court denying Westwood's motion for reconsideration of the district court's earlier order that denied Westwood's motion for summary judgment on the issue of National Fuel's liability under CERCLA.

I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

The site which is the subject matter of this action was purchased in 1925 by Iroquois. Iroquois conducted gas manufacturing and storage operations on the land through 1951. For several years there-

after it continued to use the site for gas compression and storage. During these operations Iroquois placed or used various underground pipes and structures at the site. In 1968, Iroquois demolished certain structures on the northeast portion of the site, but left other structures on the site standing.

Iroquois sold the site to Westwood in 1972 for $60,100. Westwood demolished the remaining structures on the site and constructed a warehouse on the southern portion of the site. During these construction activities and associated soil testing, Westwood discovered various subsurface contaminants. In the instant action Westwood seeks to recover the response costs—the costs of cleaning up the contaminants—for which it claims National Fuel is liable. Westwood's complaint alleged claims pursuant to CERCLA as stated above, and related common law claims of public nuisance, private nuisance, and restitution. CERCLA § 107(a)(2) makes "any person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed of" liable for the response costs incurred by another. "Facility" is defined in § 101(9) as "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located."

In its answer to Westwood's complaint, National Fuel alleged various affirmative defenses. In its order of May 21, 1990, 737 F.Supp. 1272 (W.D.N.Y.1990), the district court, among other things, granted National Fuel's motion to dismiss Westwood's private nuisance and restitution claims; denied National Fuel's motion with respect to Westwood's CERCLA and public nuisance claims; and denied Westwood's motion for summary judgment which asserted that National Fuel was liable on its CERCLA claim.

The district court held that National Fuel had raised a triable issue of fact by contending that, under the "third-party defense" of CERCLA § 107(b)(3), it was not liable on Westwood's CERCLA claims. Section 107(b)(3) provides in relevant part:

"There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—

.    .    .    .    .

(3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs *in connection with a contractual relationship*, existing directly or indirectly, with the defendant ... if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions...." (emphasis added)

National Fuel did not dispute the fact that its 1972 sales contract with Westwood was a "contractual relationship", since CERCLA § 101(35)(A) provides that "[t]he term 'contractual relationship', for the purpose of section 9607(b)(3) of this title includes, but is not limited to, land contracts, deeds or other instruments transferring title or possession...." National Fuel asserted, however, that Westwood's construction activities were not undertaken by Westwood "in connection with" the contractual relationship between National Fuel and Westwood. Furthermore, National Fuel asserted that, if in fact it placed hazardous substances at the site, it exercised due care with respect to such substances and took precautions against the foreseeable acts or omissions of third persons. Specifically, National Fuel asserted that any such substances that were not eventually removed from the premises for off-site use or disposal were left inside secure subsurface receptacles. Moreover, National Fuel asserted that the structural integrity of these subsurface receptacles left at

the site would not have been breached and therefore hazardous substances would not have escaped but for the unforeseeable construction activities of Westwood.

The district court held that the phrase "in connection with" in § 107(b)(3) requires that there be some relationship between the disposal/releasing activity and the contract with the defendant for a defendant to be barred from raising the third-party defense. Since it held that National Fuel had raised a triable issue of fact by contending that Westwood was the sole cause of the release or threatened release of hazardous substances at the site, the court denied Westwood's motion for summary judgment which asserted that National Fuel was liable under CERCLA § 107(a)(2).

Westwood made a motion for reconsideration of the court's decision in light of CERCLA § 101(35)(C), which was added to CERCLA when Congress enacted § 101(f) of the Superfund Amendments and Reauthorization Act of 1986. Section 101(35)(A) and (B) establish what is known as the "innocent landowner exception", which protects landowners who acquire the property after the disposal or placement of hazardous substances on it and who do not know and have no reason to know that the hazardous substances are on the property. The first sentence of § 101(35)(C) provides that "[n]othing in this paragraph or in section 9607(b)(3) of this title shall diminish the liability of any previous owner or operator of such facility who would otherwise be liable under this chapter."

The district court, in its order of June 19, 1991, 767 F.Supp. 456 (W.D.N.Y.1991), reaffirmed its holding that the mere existence of a contractual relationship does not preclude a former owner from invoking the third-party defense, and rejected Westwood's contention that § 101(35)(C) forecloses a prior owner like National Fuel from asserting the third-party defense provided for in § 107(b)(3). There followed the § 1292(b) certifications referred to above.

On the issues raised by Westwood's interlocutory appeal as stated above, we af-firm the district court for the reasons set forth below.

## II.

As a preliminary matter, we are constrained to address the question, not raised by either party, whether this appeal from an interlocutory order pursuant to 28 U.S.C. § 1292(b) should be entertained by us.

Section 1292(b) provides that, if both the district court and the court of appeals make the required certification, an appeal may be taken from an interlocutory order not otherwise appealable where "such order involves a controlling question of law as to which there is substantial ground for difference of opinion *and ... an immediate appeal from the order may materially advance the ultimate determination of the litigation....*" (emphasis added).

After we have had the benefit of full briefing and argument, we sometimes find that the § 1292(b) certification may have been improvidently granted. This appeal comes very close to that situation.

Although the issues raised on this appeal provide substantial ground for difference of opinion, and are controlling in the sense that National Fuel's ability to raise the third-party defense to liability provided in § 107(b)(3) depends on their resolution, it is not clear to us that our disposition of these issues will materially advance the ultimate determination of this case. Even if we were to hold that National Fuel is barred from raising the third-party defense provided in § 107(b)(3), many of the same factual issues relevant to that defense would still have to be litigated pursuant to CERCLA § 113(f), which allows National to assert a claim for contribution against Westwood. Under § 113(f), the district court may "allocate response costs among liable parties using such equitable factors as the court determines are appropriate." Even if barred from raising § 107(b)(3)'s third-party defense to liability, therefore, National Fuel would still be allowed to attempt to show that Westwood is solely responsible for the release or threatened release of hazardous substances at the site.

■ Nevertheless, despite some misgivings as to the propriety of the § 1292(b) certification in this case, we shall address the merits of the appeal. Before doing so, however, we urge the district courts to exercise great care in making a § 1292(b) certification. For after all, the district courts are presumed to be more familiar with a case than is the court of appeals prior to briefing and argument.

### III.

■ The district court held that the phrase "in connection with" requires that there be some relationship between the disposal/releasing activity and the contract with the defendant for the defendant to be barred from raising the third-party defense of § 107(b)(3). The court stated that to hold otherwise would render the language "in connection with" superfluous, a result generally at odds with an accepted principle of statutory construction. 737 F.Supp. at 1286 (citing *Ohio Power Co. v. Federal Energy Regulatory Comm'n*, 880 F.2d 1400, 1406 (D.C.Cir.) (constructions rendering statutory language superfluous are disfavored), *reh'g and reh'g en banc denied*, 897 F.2d 540 (D.C.Cir.1989), *rev'd on other grounds*, 111 S.Ct. 415 (1990); *National Ass'n of Recycling Indus., Inc. v. Interstate Commerce Comm'n*, 660 F.2d 795, 799 (D.C.Cir.1981) (same)).

Other cases considering this or similar questions also have indicated that something more than a mere contractual relationship is required. In *United States v. Hooker Chemicals & Plastics Corp.*, 680 F.Supp. 546 (W.D.N.Y.1988), the court held that defendants' contractual relationship with the present landowner—defendants had deeded the land to the City—precluded defendant from raising the third-party defense of § 107(b)(3) since "[defendant] was able to control the acts of these subsequent purchasers because of the nature of its relationship with these defendants in this case." *Id.* at 558. In *Shapiro v. Alexanderson*, 743 F.Supp. 268 (S.D.N.Y.1990), the court held that the contractual relationship clause of § 107(b)(3) does not embrace "all acts by a third party with any contrac-

tual relationship with a defendant. Such a construction would render the language 'in connection with' mere surplusage." *Id.* at 271. "The act or omission must occur in a context so that there is a connection between the acts and the contractual relationship." *Id.* In *Shapiro*, the court described the "classic scenario" in which a landowner would be precluded from asserting a § 107(b)(3) defense: when the third party is operating a landfill pursuant to a contract with the owner. *Id.*

■ We agree with the district court that a landowner is precluded from raising the third-party defense only if the contract between the landowner and the third party somehow is connected with the handling of hazardous substances. The result would be the same if the contract allows the landowner to exert some control over the third party's actions so that the landowner fairly can be held liable for the release or threatened release of hazardous substances caused solely by the actions of the third party. The mere existence of a contractual relationship between the owner of land on which hazardous substances are or have been disposed and a third party whose act or omission was the *sole* cause of the release or threatened release of such hazardous substances into the environment does not foreclose the owner of the land from escaping liability, provided that the owner satisfies the additional requirements of § 107(b)(3)(a) and (b).

### IV.

Section 101(35)(A) and (B) establish the "innocent landowner exception" (also referred to as the "innocent landowner defense" or the "innocent purchaser defense"). Section 101(35)(A) provides in relevant part:

"The term 'contractual relationship', for the purpose of section 9607(b)(3) of this title includes, but is not limited to, land contracts, deeds or other instruments transferring title or possession, unless the real property on which the facility concerned is located was acquired by the defendant after the disposal or placement of the hazardous substance on, in,

or at the facility, and one or more of the circumstances described in clause (i), (ii), or (iii) is also established by the defendant by a preponderance of the evidence:

(i) At the time the defendant acquired the facility the defendant did not know and had no reason to know that any hazardous substance which is the subject of the release or threatened release was disposed of on, in, or at the facility. . . .

In addition to establishing the foregoing, the defendant must establish that he has satisfied the requirements of section 9607(b)(3)(a) and (b) of this title."

█ Section 101(35)(B) further provides that the "innocent landowner exception" is available only to defendants who make appropriate inquiry, at the time of acquisition, into the previous ownership and use of the property.

Section 101(35)(C) provides that:

"Nothing in this paragraph or in section 9607(b)(3) of this title shall diminish the liability of any previous owner or operator of such facility who would otherwise be liable under this chapter. Notwithstanding this paragraph, if the defendant obtained actual knowledge of the release or threatened release of a hazardous substance at such facility when the defendant owned the real property and then subsequently transferred ownership of the property to another person without disclosing such knowledge, such defendant shall be treated as liable under section 9607(a)(1) of this title and no defense under section 9607(b)(3) of this title shall be available to such defendant."

█ Westwood contends that the first sentence of § 101(35)(C) precludes National Fuel—indeed, all previous owners of property on which hazardous substances were disposed or placed—from invoking the third-party defense set forth in § 107(b)(3). The district court held Westwood's restrictive—though perhaps literal—reading of § 101(35)(C) to be untenable for several reasons. First, the court held that the second sentence of § 101(35)(C) makes it "abundantly clear" that, had Congress intended to place the defense provided for in § 107(b) beyond the reach of a particular class of defendants, it knew precisely how to do so. Second, it would be nonsensical for Congress virtually to bury in § 101(35)(C) a fundamental change in the scope of § 107(b)(3) rather than simply to amend the language of § 107(b)(3) itself. We hold both of these reasons to be persuasive. Logic suggests that Congress intended § 101(35)(C) merely to circumscribe the parameters of the innocent landowner exception set forth in § 101(35)(A) and (B), and not to abrogate completely the right of previous owners to raise the third-party defense set forth in § 107(b)(3).

The district court suggested a third ground for its determination that the first sentence of § 101(35)(C) was not intended completely to bar § 107(a)(2) defendants—prior land owners—from asserting the third-party defense. The court stated that "the innocent-landowner exception . . . provides an exemption from the 'in connection with' limitation: under certain circumstances, it will lift the extra burden normally placed on defendants who are contractually related to the allegedly responsible third party, thereby putting them in the same position as defendants who are not." 767 F.Supp. at 460. In other words, § 101(35) shields innocent landowners from liability for the release or threatened release of contaminants caused solely by the act or omission of a third party, *even though the act or omission of the third party occurred "in connection with a contractual relationship" with the innocent landowner.* The legislative history appears to support such a reading of the statute:

"[Section 101(35)] is intended to clarify and confirm that under limited circumstances landowners who acquire property without knowing of any contamination at the site and without reason to know of any contamination (or as otherwise noted in the amendment) may have a defense to liability under section 107 and therefore should not be held liable for cleaning up the site if such persons satisfy the remaining requirements of section 107(b)(3). A person who acquires proper-

ty through a land contract or deed or other instrument transferring title or possession that meets the requirements of this definition may assert that an act or omission of a third party should not be considered to have occurred in connection with a contractual relationship as identified in section 107(b) and therefore is not a bar to the defense."

H.R.Conf.Rep. No. 962, 99th Cong., 2d Sess. 186–87, *reprinted in* 1986 U.S. Code Cong. & Admin.News 2835, 3279–80.

Accordingly, an innocent purchaser subsequently may contract with a third party for the removal or disposal of hazardous wastes that he discovers on his property, without surrendering the third-party defense provided by § 107(b)(3). The first sentence of § 101(35)(C) is intended merely to emphasize that other § 107(a) defendants—those who are not "innocent" under § 101(35)—are denied such an exemption. For example, non-innocent landowners cannot invoke the third-party defense when they contract for the removal or disposal of hazardous substances on their property, even if a subsequent release or threatened release of hazardous substances is attributable solely to the acts or omissions of the party with whom they contracted.

■ We agree with the district court's ultimate conclusion that "the first sentence of § 101(35)(C) limits only the application of the innocent-landowner exception, rather than both the innocent-landowner exception *and* the balance of the third-party defense." We add, however, that we do not understand the district court to have held that a party who would otherwise qualify for the innocent-landowner exception forfeits that exemption by selling the property and thereby becoming a "previous" owner of the property. *See* 767 F.Supp. at 460–61.

The second sentence of § 101(35)(C) makes it clear that Congress intended the innocent landowner exception to allow innocent purchasers of property—i.e. purchasers who are unaware, despite appropriate inquiry, that hazardous substances have been placed or disposed of on the property—subsequently to sell the property without losing their exemption from liability caused solely by a third party "in connection with" such a sale. This is subject to several conditions: first, that such innocent purchasers either do not learn of the existence of such hazardous substances, or, if they do learn of their existence, they disclose such knowledge to the person to whom they subsequently transfer ownership of the property; second, that the innocent landowner fulfills the additional requirements of § 107(b)(3)(a) and (b)—i.e. the innocent landowner must exercise due care with respect to the hazardous substances he discovers on his property, and he must take precautions against the foreseeable acts or omissions of third parties. Indeed, as the district court recognized, "it would make little sense for Congress to provide a defense for an 'innocent' land purchaser but fail to provide corresponding protection for that same landowner when he or she becomes an 'innocent' seller...." *Id.* at 462.

In short, we agree with the district court's holding that "nothing in either § 107(b)(3) or § 101(35) ... precludes National Fuel as a matter of law from presenting its third-party defense." *Id.* at 463.

## V.

To summarize:

We hold that the district court correctly held that the phrase "in connection with a contractual relationship" in CERCLA § 107(b)(3) requires more than the mere existence of a contractual relationship between the owner of land on which hazardous substances are or have been disposed of and a third party whose act or omission was the sole cause of the release or threatened release of such hazardous substances into the environment, for the landowner to be barred from raising the third-party defense provided for in that section. In order for the landowner to be barred from raising the third-party defense under such circumstances, the contract between the landowner and the third party must either relate to the hazardous substances or allow

the landowner to exert some element of control over the third party's activities.

We also hold that the district court properly held that § 101(35)(C) does not entirely preclude previous landowners from invoking the third-party defense provided for in § 107(b)(3).

The order of the district court denying Westwood's motion for reconsideration of its earlier order which denied its motion for summary judgment is affirmed.

Affirmed.