EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

MAGGIES PARATRANSIT
CORP., Defendant.

No. 03–CV–6087 (NGG)(KAM).

United States District Court,
E.D. New York.

Jan. 6, 2005.

Elizabeth Anne Grossman, New York, NY, for Plaintiff.

## MEMORANDUM & ORDER

GARAUFIS, District Judge.

On November 29, 2004, the court issued a Memorandum & Order ("November M & O") that granted in part and denied in part defendant Maggies Paratransit Corp.'s ("Maggies") motion to dismiss. Maggies now moves the court to certify for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), its decision to deny dismissal of the EEOC's pattern or practice claim.

Familiarity with the facts and issues of the November M & O is assumed.

For the following reasons, this motion is denied.

## I. LEGAL STANDARD

Under 28 U.S.C. § 1292(b), a district judge may certify a question for interlocutory appeal where: (1) the decision to be appealed involves a controlling issue of law; (2) there is a substantial ground for difference of opinion on the controlling issue of law; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. "These three prerequisites create a significant hurdle to certification, and the barrier is elevated by the mandate that section 1292(b) be 'strictly limited' because 'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *McNeil v. Aguilos*, 820 F.Supp. 77, 79 (S.D.N.Y.1993) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir.1990) (internal quotations and citations omitted)). Further, the Second Circuit has "urge[d] the district courts to exercise great care in making a § 1292(b) certification. For after all, the district courts are presumed to be more familiar with a case than is the court of appeals prior to briefing and argument." *Westwood Pharms., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (1992).

## II. DISCUSSION

Based on the advisability of a district court taking a cautious approach in determining whether to certify an issue for interlocutory appeal, it is clear that the Defendant's motion must be denied. While the question of law is controlling, this fact is outweighed by the absence of legitimate dispute regarding the relevant legal standard. Further, based on the rel-

atively meager likelihood of success should Maggies be allowed to appeal, such an appeal cannot be viewed as materially advancing the termination of the litigation.

### A. Controlling Question of Law

■ Under the first prong of 1292(b), the court must determine whether the November M & O rests on a "controlling question of law." In the context of a 1292(b) motion, the term controlling question has a broader definition than it is typically accorded in other situations; it can include not only those issues that will resolve the action in its entirety, but those that are dispositive in other respects, such as whether a particular claim exists. 19 Moore's Federal Practice § 203.31 (Matthew Bender 3d ed.2004) (collecting Second Circuit cases in which the existence of a claim was decided on interlocutory appeal). Based on this standard, the question of whether the EEOC can maintain its pattern or practice claim is a controlling question of law in this case: if the Second Circuit were to reverse the court's decision in the November M & O, the claim would be dismissed.

### B. Substantial Ground for Difference of Opinion on the Controlling Issue of Law

Maggies contends that the Eastern District and Southern Districts of New York are split concerning the standards necessary to bring a pattern or practice claim and that the Second Circuit should have an opportunity to resolve this divergence. Maggies' characterization of a split between this court and the Southern District, as reflected by the decision in *EEOC v. Golden Lender Fin. Group*, No. 99 Civ. 8591 (JGK), 2000 WL 381426 (S.D.N.Y. Apr.13, 2000), is simply incorrect.

Maggies misconstrues the import of *Golden Lender* by extrapolating the following meaning from the case: "*Golden Lender* stands for the rule that where only individual claims are alleged in the charge(s), by definition, no pattern or practice claim can be 'reasonably related' to that charge." (Def. Memo. at 5). This distillation of the case's meaning fails to account for the specific facts of the case and also overly simplifies the case's treatment of the law in this area. The key fact that Maggies' analysis glosses over is that in *Golden Lender* the pattern or practice claims regarding race and national origin seemed to have appeared from nowhere; this is not the case in the present matter, where the pattern or practice claims stemmed directly from the EEOC's investigation. Notably, the *Golden Lender* court's analysis concerning the race and national origin pattern and practice claims deals solely with the substance of the charges without any mention of the EEOC investigation or its findings. Since the court later indicated that the scope of an investigation can be material to determining the validity of a pattern or practice claim when it allowed the sex discrimination pattern or practice claim to proceed, this absence is significant. It suggests that the EEOC's investigation of the claims raised in *Golden Lender* did not turn up any such information. In this case, however, the EEOC's investigation did reveal allegations of a pattern or practice of sexual discrimination. (*See* November M & O at 6–7). Thus a better summation of the holding of *Golden Lender* is that where only individual claims are alleged in the charge(s) and the EEOC's investigation does not reveal such allegations, no pattern or practice claim can be "reasonably related" to the charge(s). Judged against this more complete standard, this court's decision is in line with the holding in *Golden Lender*.

■ The reading of *Golden Lender* that Maggies favors also fails to account for relevant Second Circuit precedent in this area in much the same way that it fails to acknowledge the crucial factual distinction with this case. While the general rule is that a complaint may only reflect the substance of the charges filed with the EEOC, the Second Circuit has made clear that exceptions to this requirement exist. Of relevance here is the exception that allows a complaint to reflect the substance of an "EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359–60 (2d Cir.2001), *cert. denied*, 536 U.S. 922, 122 S.Ct. 2586, 153 L.Ed.2d 776 (2002). This exception was not lost on the court in *Golden Lender*, but Maggies appears to avoid this judicial nuance because it would and does undercut its argument. The *Golden Lender* court decided that the sex discrimination pattern or practice claim could proceed not only because two of the three charges alleged a pattern and practice but also because it found that the "scope of the investigation conducted by the EEOC ... supports the conclusion that the claim of a pattern and practice of sex discrimination is reasonably related to the charges filed in this case." 2000 WL 381426 at *4.

Finally, Maggies' reverence for *Golden Lender* notwithstanding, that decision alone does not represent the entirety of the Southern District's body of law concerning this issue. Indeed, this court relied on another case from the Southern District in reaching its conclusions in the November M & O. In *Sidor v. Reno*, No. 95 Civ. 9588 (KMW), 1997 WL 582846, at *10 (S.D.N.Y. Sept.19, 1997), which was cited with approval in *Golden Lender*, the court found the fact that the plaintiff had alleged discrimination against other deaf employees during the course of the EEOC investigation was sufficient to allow a pattern or practice claim to proceed even though no such claim was made in the plaintiff's initial charge. This holding demonstrates that the trial courts within the Second Circuit do not in fact view the standards for sustaining a pattern or practice claim differently. Thus, even if I were to assume for the sake of argument that this court's previous decision and the *Golden Lender* ruling were at odds, the court would be under no obligation to adhere to a differing view by a court of coordinate jurisdiction.

*C. Advancing the Ultimate Termination of the Litigation*

■ Because this court has determined that the question at issue is not the subject of a substantial difference of opinion within the circuit, there is no basis for viewing this interlocutory appeal as a means of advancing the ultimate termination of the litigation. As the Second Circuit has noted: "Section 1292(b)'s legislative history reveals that although that law was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir.1996). Since the odds are against Maggies' success on this appeal, such a step would only serve to delay resolution of the case. *See, e.g., McNeil v. Aguilos*, 820 F.Supp. 77, 80 (S.D.N.Y.1993).

■ Moreover, while the standard involved in allowing a pattern or practice claim to proceed presents a question of law, it also involves issues of fact from the record. This court is in a much better position than the Second Circuit, which would not have the benefit of a completed record, to make a determination of these factual issues. Although the Second Circuit clearly has the capacity to sift through the relevant facts on appeal, doing so

would pose an unnecessary drain on its time and energy. If every party that disputed a lower court's ruling were allowed to launch an interlocutory appeal, the judicial system might well enter a state of interlocutory paralysis; appellate courts would be drafted into repeating the work of the district courts which would be left idle waiting for their cases to be returned. Instead, the better approach is to use interlocutory appeal judiciously, implementing it only when truly necessary. And, as outlined above, this case does not present such a situation.

Maggies' argument in support of interlocutory appeal simply does not rise to the level of justifying the exceptional procedure it seeks. Maggies asserts that the motion should be granted because "in all phases of this litigation to date, Maggies' posture and actions were predicated on a reliance on the applicability of · the rule announced in *Golden Lender* and a willingness to address the claims of the Charging Parties." (Def. Memo. at 7–8). But a party's myopic focus on the holding of a single case that, it bears noting, is only persuasive authority for this court, simply does not justify interrupting ongoing litigation. While Maggies' disappointment with the court's differing view of *Golden Lender* is understandable given the consequences for its case, this disappointment cannot justify granting the requested appeal.

### III. CONCLUSION

For the reasons stated above, Maggies' motion for an order of interlocutory appeal concerning the denial of its motion to dismiss the plaintiff's pattern or practice claim is DENIED.

SO ORDERED.