Belknap
No. 86-270

DAVID J. VINCENT & a.

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE

August 6, 1987

622

*Wiggin & Nourie*, of Manchester (*Doreen F. Connor* and *Gordon A. Rehnborg, Jr.*, on the brief, and *Ms. Connor* orally), for the plaintiffs.

*Sulloway, Hollis & Soden*, of Concord (*Warren C. Nighswander* and *Robert H. Hafner* on the brief, and *Mr. Nighswander* orally), for the defendant.

BATCHELDER, J.   The plaintiffs' building burned shortly after the defendant, Public Service Company of New Hampshire, reconnected electrical service to it. At a jury trial for damages, the Superior Court (*Dickson*, J.) denied the plaintiffs' motion to qualify a professor of engineering as an expert witness and granted the defendant's motion for a directed verdict. The plaintiffs appeal both of these rulings. We affirm.

On July 9, 1982, the plaintiffs' new tenant, Hugh Grissom, requested the defendant to restore electrical service to the plaintiffs' apartment that day. The defendant replied that it would try to meet Grissom's request that afternoon. In the course of moving into the apartment on that date, Grissom placed wooden drawers containing clothes on top of the electric stove and then left the building early in the afternoon, intending to return the next day. One of the burners on the stove was on, in the "high" position. Later that afternoon, Laurence LaCroix, an employee of the defendant, reconnected electrical service to the apartment. The wooden drawers resting on the burners ignited moments later, causing serious damage to the building and its contents.

When LaCroix reconnected the electricity, he noticed that the meter indicated a small current flowing into the apartment. LaCroix did not disconnect the power, did not notify anyone that power was being drawn into the apartment, did not investigate what was drawing the power, and did not turn off the customer's main power switch, located just beneath the meter. He testified that, during his twelve years as a meter reader for the defendant, he had reconnected more than a thousand meters; that the customer was rarely home at the time of the reconnection; that about ninety percent of the time the reconnected meter immediately showed a power draw; that ordinarily a meter connector has no access to the customer's main power switch; and that no harm had ever occurred from any of those reconnections. LaCroix's actions were entirely consistent with the defendant's manual. The plaintiffs do not allege that the defendant's equipment was defective or operating improperly. Based on these facts, the plaintiffs argue that the trial court should have permitted the jury to decide whether the defendant was negligent for failing to foresee damage and for failing to take preventive actions, such as adopting and implementing a policy requiring field personnel both to turn off the main power switch when the newly reconnected meter shows a draw of power in the customer's premises and to notify the customer of the situation.

■■ A trial court may direct a verdict only "when the evidence and all reasonable inferences therefrom construed most favorably to the party opposing the motion would not enable a jury to find for that party." *Kierstead v. Betley Chevrolet-Buick, Inc.*, 118 N.H. 493, 496, 389 A.2d 429, 431 (1978). The court's function is "to determine whether the foreseeable risk and the relationship of the parties was such as to impose any duty of care at all upon the defendant for the plaintiff's benefit." *Paquette v. Joyce*, 117 N.H. 832, 837, 379 A.2d 207, 210 (1977). In the present case, the trial court ruled that, unless the defendant actually knew of defective wiring or appliances under the customer's control, it had no duty to protect the plaintiffs from damage caused by a third party's misuse of the plaintiffs' appliance. Having thus narrowed the scope of the defendant's duty to the plaintiffs, the court found that the defendant had conformed to that duty and that no reasonable person could reach a contrary conclusion.

■■ Our first inquiry, then, is whether the trial court correctly defined the defendant's duty to the plaintiffs. We hold that, as a matter of law, the trial judge correctly ruled that a company supplying electricity has no duty to anticipate that its customer will use appliances on the customer's premises in a hazardous manner. In the absence of strict liability, the general rule of tort liability is that "[i]f the defendant could not reasonably foresee any injury as the result of his act, or if his conduct was reasonable in light of what he could anticipate, there is no negligence, and no liability." *Paquette v. Joyce, supra* at 836–37, 379 A.2d at 210 (quoting W. PROSSER, LAW OF TORTS § 43 (4th ed. 1971)). In *Wood v. Public Service Co.*, 114 N.H. 182, 188–89, 317 A.2d 576, 579–80 (1974), we expressly refused to apply the doctrine of strict liability to electric companies. In the present case, the defendant could not have reasonably foreseen the fire. It is, of course, common knowledge that electricity is dangerous. Therefore, consumers of electricity are expected to exercise care when they use it. The defendant power company was doubtlessly aware that some appliance or light bulb is frequently left on inadvertently when the electricity is disconnected; however, this fact alone cannot warn the supplier of power that a dangerous condition is sufficiently likely to exist that it should take special measures to forestall damage.

Our decision accords with similar cases in other jurisdictions, holding that the supplier of electricity is liable only when it actually knew of hazardous conditions that would draw current from the re-energized lines. *See, e.g., Summers v. Union Elec. Co.*, 565 S.W.2d

677, 679 (Mo. App. 1978); *Ianire v. University of Delaware*, 244 A.2d 427, 428–29 (Del. Super. 1968).

The plaintiffs contend that the present case is controlled by *Wood v. Public Service Co.*, 114 N.H. at 487–88, 317 A.2d at 579, which required that the issue of liability be submitted to the jury even when the defendant had placed its wires in conformity with industry standards. *Wood*, however, is inapposite to the present case in that it was concerned with injury caused by the company's own uninsulated wires placed within a few feet of a home. *Id.* at 184–85, 317 A.2d at 577. In a case such as *Wood*, not only is the risk of injury foreseeable enough to pose a jury question, but also the focal fact in determining causation is the electric company's maintenance of its own equipment.

■■ This court will uphold a trial court's ruling on a motion for a directed verdict for the defendant when the record supports the conclusion that the trial judge did not abuse his discretion in determining that no rational juror could find that the defendant had violated a duty to the plaintiff. *See Reid v. Spadone Mach. Co.*, 119 N.H. 457, 462, 404 A.2d 1094, 1097 (1979); *Kierstead v. Betley Chevrolet-Buick, Inc.*, 118 N.H. at 495–96, 389 A.2d at 431–32. In the present case, the record amply supports the trial court.

■ We turn briefly to the issue of whether the trial court properly denied qualification of the plaintiffs' expert witness. The expert, Professor Russell L. Valentine, of the University of New Hampshire department of engineering, would have testified that, when electric companies restore service, they should be held to the more exacting safety procedures required of the propane gas industry by the latter's own safety codes. After *voir dire*, the court rejected the plaintiffs' motion to qualify Professor Valentine, apparently on the ground that his expertise in mechanical engineering did not qualify him to testify as an expert on electricity. Nonetheless, because the professor's testimony would have been irrelevant, we do not address the issue of his qualifications. As we have said, the determination of the scope of the defendant's duty is the court's function, and not the jury's. The trial court could reasonably find that the jury was able to adequately address the issue as to whether the defendant had breached its duty without the aid of the testimony of this witness. Thus, the trial court correctly excluded the witness's testimony. The fact that we reach this conclusion on the ground that the testimony would have been unnecessary rather than on the ground that the witness was

626

unqualified does not require us to reverse the trial court. *See Lemay v. Rouse*, 122 N.H. 349, 352, 444 A.2d 553, 555 (1982).

*Affirmed.*

All concurred.