Strafford
No. 90-177

FREDERICK W. GOODWIN & *a.*

v.

DAVID JAMES & *a.*

August 2, 1991

*Ransmeier & Spellman,* of Concord (*Diane L. Perin* on the brief and orally), for the plaintiffs.

*Wiggin & Nourie,* of Manchester (*Doreen F. Connor* and *Jeffrey B. Osburn* on the brief, and *Ms. Connor* orally), for the defendant David James.

*Bouchard & Mallory P.A.,* of Manchester (*Catherine C. Catalano* on the brief, and *Kenneth Bouchard* orally), for the defendant Faye James.

BATCHELDER, J.   This appeal is from a dismissal of a negligence action brought for personal injuries sustained by the plaintiff Frederick W. Goodwin, and a loss of consortium claim by the plaintiff Gertrude E. Goodwin. At the close of the plaintiffs' evidence, the case was dismissed by the Superior Court (*Dickson,* J.) upon a written order, in which the court concluded that there was no duty of care owed by the defendants to the plaintiff Frederick Goodwin. It is from this ruling that the plaintiffs appeal. We affirm the court's ruling as to the defendant Faye James and reverse its ruling as to the defendant David James, for the reasons that follow.

David James awoke on January 22, 1984, a Sunday, at his home in Union, to find that the outside temperature was twenty-six degrees

below zero. His truck, a Chevy Luv, would not start, and he solicited the help of his friend and neighbor, Frederick Goodwin. Goodwin was at home in the company of two guests, one Farrington and one Shannon, both of whom had assisted Goodwin in starting his own car by the use of jumper cables from the Shannon vehicle. Goodwin agreed to help James and was joined in the enterprise by Farrington and Shannon. It was, in fact, Shannon who drove them to the James residence in his car, a Ford LTD.

An unsuccessful attempt was made to start the truck by using the jumper cables from the Shannon automobile. The truck was then pushed manually from its garage to the highway, so that it could be started by having the Ford LTD push it while the truck operator released the clutch to fire the engine on its compression stroke. David James requested his wife Faye to operate the truck throughout the maneuver and, in due course, she assumed her post at the steering wheel of the truck. Shannon then brought his Ford LTD to the rear of the truck to commence the pushing operation. Because the bumper of the Ford LTD was higher than the bumper of the truck, David James climbed onto the hood of the Ford to add weight in order to align the two bumpers. His weight alone was insufficient for the purpose, and he was joined almost immediately by Farrington. Their combined weight was likewise insufficient, and they were joined by Goodwin, who weighed approximately three hundred pounds. The combined weight of the three men on the hood was sufficient to bring about contact between the two bumpers.

When the Shannon vehicle started to push the truck, David James and Farrington were holding onto the rear aspect of the hood where it joins the area of the automobile body near the well for the windshield wipers. This gave them a handhold and a measure of security and stability. At the same time, Goodwin, who was located more toward the leading edge of the hood, was holding onto the closed tailgate of the pickup truck. James told Goodwin to stop holding onto the truck, and Goodwin released his hold and leaned back. After he did so, Goodwin did not hold onto anything on the car.

Goodwin testified that David James gave a hand signal to Shannon to begin pushing the truck with his car. As the vehicles proceeded along the highway for a short distance, the truck's engine started running, and Mrs. James pulled away from the Shannon vehicle. She testified that, looking through her side view mirror, she could see Farrington sitting on the hood of the car, but that she was not able to see Goodwin. Almost immediately after the vehicles parted, as the truck drove away, Goodwin fell forward and to the right, landing

upon the highway. At that time, he was run over by the Shannon vehicle, giving rise to the injuries for which the plaintiffs seek damages in this litigation. The record reveals that the defendant David James, in response to questions about the safety of the whole pushing operation, testified that he knew at the time that it was "a bad safety idea."

At the close of the plaintiffs' evidence, the defendants' counsel each made oral motions for a directed verdict. The trial court granted the motions and later issued a written order. In its order, the court stated that:

> "Considering the foreseeable risk and the relationship of the parties, the Court finds no duty of care at all by these defendants for the benefit of these plaintiffs. The plaintiff, Frederick Goodwin, was not ordered or asked to get on the hood of the Shannon vehicle. He did so voluntarily. If he was owed a duty, the duty owed him was by Daniel Shannon [the driver of the Ford LTD], not the defendants, David and Faye James."

The issue presented in this case is whether the trial court erred in granting the defendants' motions for directed verdict based on its determination that the defendants did not owe the plaintiff Frederick Goodwin a duty of care. The plaintiffs argue that it was foreseeable that Frederick Goodwin would be injured as a result of the defendants' conduct, and that the defendants therefore owed him a duty of care. According to the plaintiffs, this duty of care arose by virtue of the following facts: the whole pushing operation was organized by the Jameses for their own benefit; David James signaled the start of the operation; he knew that Goodwin was not securely seated on the car and would have realized that Shannon's view would be obstructed by the three men on the hood of the car; and finally, he admitted that he knew this particular activity was unsafe. The defendants, on the other hand, maintain that it was not reasonably foreseeable that their conduct would result in injury to Frederick Goodwin.

■■ A motion for directed verdict may be granted only if the trial court determines, after considering the evidence and construing all inferences therefrom most favorably to the non-moving party, that no rational juror could conclude that the non-moving party is entitled to any relief. *Vincent v. Public Serv. Co. of N.H.*, 129 N.H. 621, 624, 529 A.2d 397, 398 (1987). If the evidence is conflicting on a material issue, then the motion must be denied. *Morrill v. Tilney,*

128 N.H. 773, 778, 519 A.2d 293, 295 (1986). In the present case, "whether the defendants' conduct created such a foreseeable risk of harm to the . . . plaintiff that defendants were under a duty to avoid it" is a question of law to be determined in the first instance by the trial court. *Paquette v. Joyce*, 117 N.H. 832, 834–35, 379 A.2d 207, 209 (1977); PROSSER AND KEETON ON TORTS § 37, at 236 (5th ed. 1984). We will uphold the trial court's ruling on a motion for directed verdict "when the record supports the conclusion that the trial [court] did not abuse [its] discretion in determining that no rational juror could find [for the non-moving party]." *Vincent, supra* at 625, 529 A.2d at 399.

■■ In order to recover for negligence, a plaintiff must show that "there exists a duty, whose breach by the defendant causes the injury for which the plaintiff seeks to recover." *Rounds v. Standex International*, 131 N.H. 71, 76, 550 A.2d 98, 101 (1988). Whether a duty exists in a particular case depends on what risks, if any, are reasonably foreseeable. *McLaughlin v. Sullivan*, 123 N.H 335, 342, 461 A.2d 123, 127 (1983). The general rule of tort liability, assuming that strict liability is inapplicable, is that a defendant will not be held liable for negligence if he could not reasonably foresee that his conduct would result in an injury or if his conduct was reasonable in light of what he could anticipate. *Vincent, supra* at 624, 529 A.2d at 398; RESTATEMENT (SECOND) OF TORTS § 289 (1965). The concept of foreseeability applied in this State originates from *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928). It provides that "[a] person may be liable 'only to those who are foreseeably endangered by [his] conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous.'"*Corso v. Merrill*, 119 N.H. 647, 651, 406 A.2d 300, 303 (1979) (quoting 2 F. HARPER & F. JAMES, THE LAW OF TORTS § 18.2, at 1018 (1956)).

When Helen Palsgraf purchased her ticket from the Long Island Railroad Company to go to Rockaway Beach, she set in motion the circumstances and ultimate judicial analysis which led to a conceptual observation that, when reduced to its simplest terms, becomes at the same time both law and literature: "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." *Palsgraf*, 248 N.Y. at 344, 162 N.E. at 100.

Helen Palsgraf, it will be remembered, stood upon a station platform of the Long Island Railroad Company at a time when a guard

on a departing train endeavored to assist a man in boarding the moving and accelerating train. *Id.* at 340–41, 162 N.E. at 99. In the process, the man dropped a package wrapped in newspaper which fell upon the railroad tracks. *Id.* at 341, 162 N.E. at 99. The package, unbeknownst to the guard, contained fireworks which exploded on contact with the ground. *Id.* The ensuing explosion and concussion caused scales to tip over on the platform, striking and injuring the plaintiff, Palsgraf. *Id.* The flowing language of Chief Justice Cardozo in the opinion speaks in terms of hazards apparent to the eye of ordinary vigilance and duty as a necessary antecedent to any finding of negligence. Finding the acts of the train guard limited in scope to the rendering of assistance to the man seeking to board the train and, at best, a negligent act with respect to the man's property (the package), the *Palsgraf* court found no duty owed to the plaintiff on the facts before it. *Id.* at 345–47, 162 N.E. at 100–01.

There is no question that the trial court correctly dismissed the plaintiffs' claims against Faye James. Mrs. James was merely playing the role requested by her husband and had no connection with either the original request for assistance or any of the judgments, decisions or actions involving her husband and the others in the development of the enterprise which led to the injuries sustained by the plaintiff, Frederick Goodwin. Moreover, she testified that, up until the time of the accident, she did not know that Goodwin was sitting on the hood of the Ford LTD.

■ We view the situation differently, however, as it pertains to the defendant David James. James sought out Goodwin for assistance in starting the truck, directed his wife Faye in its operation, observed the mismatch of the bumper levels and took steps to rectify the problem by placing his own weight on the hood of the Shannon vehicle. He then willingly accepted the assistance of Farrington and Goodwin as they added their weight to the Shannon vehicle's hood, observed Goodwin in the more perilous position on the Shannon vehicle, where he was without a meaningful handhold, and directed him to remove his hand from the truck. David James knew all along that the entire undertaking was "a bad safety idea." Unlike the situation in *Palsgraf*, it appears to us that the conduct leading ultimately to Goodwin's injuries presented hazards which would objectively appear to the eye of ordinary vigilance. Three adult men crowded on the hood of a moving vehicle present hazard enough, even without the added factors inferable from the record, that the plaintiff had no handhold and that the vision of the driver of the Ford LTD was obscured to the extent he had any meaningful vision at all.

■■ We therefore hold that the facts of this case warrant the finding of a duty of ordinary care on the part of David James to the plaintiff Frederick Goodwin. Such a holding is consistent with other cases which have recognized that "[t]he owner or operator of a stalled or otherwise disabled motor vehicle is generally obliged to exercise ordinary and reasonable care to avoid injury to one assisting him in extricating the automobile from its predicament . . . ." *See* Annotation, *Liability of Owner or Operator of Automobile For Injury to One Assisting in Extricating or Starting His Stalled or Ditched Car,* 3 A.L.R. 3d 780, 782 (1965). Accordingly, we reverse the court's dismissal of the case against the defendant David James and remand it to the trial court for further proceedings, noting that the plaintiffs are entitled to have a jury determine whether the defendant breached his duty, and in what manner, and that the defendant will have available at trial such statutory and common law defenses as the trial court determines are available to him.

> *Affirmed in part; reversed in part; remanded.*

All concurred.