Strafford
No. 93-455

ROBERT J. ARTHUR

v.

HOLY ROSARY CREDIT UNION

March 28, 1995

*Law Offices of David J. KillKelley,* P.C., of Laconia (*David J. KillKelley* on the brief and orally), for the plaintiff.

*Ouellette, Hallisey, Dibble and Tanguay, P.A.,* of Dover (*Robert T. Mittelholzer* on the brief and orally), for the defendant.

HORTON, J. The plaintiff, Robert J. Arthur, appeals an order of the Superior Court (*Mohl,* J.), granting the motion of the defendant, Holy Rosary Credit Union (Holy Rosary), for a directed verdict on all counts of the plaintiff's negligence claim. We affirm in part, reverse in part, and remand.

Holy Rosary hired Credit Union Building Corporation (CUBC) to oversee and coordinate the construction, design, and furnishing of its new building in Rochester. CUBC charged a fee of three-and-one-half percent of the approximately $650,000 cost of construction. Although CUBC did not involve itself in the manner or means of construction, as project manager it inspected the construction on a weekly basis. CUBC helped Holy Rosary select Whitcher Builder, Inc., a New Hampshire construction firm with over twenty-six years of experience, as the general contractor for the construction project. Whitcher Builder was the lowest bidder for the job. The plaintiff was an employee of Whitcher Builder.

On the day of the injury, Whitcher Builder directed the plaintiff to work on an unfinished roof, which was also the floor deck for the second story. The plaintiff was to assist in covering the concrete deck with polyethylene so that the concrete would cure. The stairwell hole to the first floor was covered only by polyethylene and had not yet been covered with plywood or planks. The plaintiff injured his back by falling through this hole into the basement twenty-three feet below. The plaintiff received workers' compensation benefits. He also sued Holy Rosary, essentially asserting that (1) the construction work was an inherently dangerous activity which created a non-delegable duty in Holy Rosary, (2) CUBC was Holy Rosary's agent and negligently controlled Whitcher Builder, and (3) Holy Rosary was negligent in selecting Whitcher Builder as a contractor. The trial judge granted Holy Rosary's motion for a directed verdict on all counts at the close of the plaintiff's case, ruling that the construction work was not, as a matter of law, inherently dangerous, and that there was no evidence of negligent control or selection.

The plaintiff appeals, arguing that the court erred in granting the directed verdict by taking from the jury the following issues: (1) whether the work in which the plaintiff was engaged at the time of his injury was inherently dangerous, and thus created a non-delegable duty in Holy Rosary; (2) whether CUBC was Holy Rosary's agent, and whether, by acting negligently in its duties to supervise and control the construction, CUBC caused the plaintiff's injury; and (3) whether Holy Rosary negligently selected Whitcher Builder as the contractor.

"A trial court may grant a directed verdict only when the evidence and all reasonable inferences therefrom, construed most favorably to the party opposing the motion, would not enable a jury to find for that party." *Cloutier v. A. & P. Tea Co., Inc.,* 121 N.H. 915, 920, 436 A.2d 1140, 1143 (1981) (quotation omitted). The trial court "cannot weigh the evidence or judge the credibility of the witnesses, and, if the evidence is conflicting or several reasonable inferences may be drawn, the motion for [a directed verdict] should be denied." *Amabello v. Colonial Motors,* 117 N.H. 556, 561, 374 A.2d 1182, 1185 (1977). The plaintiff's claim must be found to be "completely without merit." *Cloutier,* 121 N.H. at 920, 436 A.2d at 1143. This court will uphold a trial court's decision to grant a motion for a directed verdict unless the trial judge abused his or her discretion in determining that no rational juror could find for the party against whom the motion is filed. *Vincent v. Public Service Co. of N.H.,* 129 N.H. 621, 625, 529 A.2d 397, 399 (1987).

The plaintiff first contends that the trial court erred by not permitting the jury to decide whether the roof work was inherently dangerous. *Respondeat superior,* or vicarious liability, ordinarily does not extend to torts by independent contractors because the employer reserves no control or power of discretion over the execution of the work. *Carter v. Berlin Mills Co.,* 58 N.H. 52, 53–54 (1876). We have long recognized an exception to this general rule when the independent contractor is engaged to perform work that is dangerous in itself. *Thomas v. Harrington,* 72 N.H. 45, 46–47, 54 A. 285, 286 (1903). The inherent danger exception applies only when "[t]he danger [arises] directly from the work . . . required to be done, and not from the negligent manner of its performance." *Id.* "[T]he phrase 'inherently dangerous' as applied to undertakings conducted through independent contractors often implies work that is dangerous even when conducted with reasonable care; . . . the exception relating to such undertakings has been principally applied in cases of demolition, excavation, and other clearly dangerous activities." *Carr v. Merrimack Farmers Exchange,* 101 N.H. 445, 449, 146 A.2d 276, 279 (1958).

The inherent danger doctrine applies only where the alleged danger is "naturally to be apprehended" by the defendant at the time it

engages the independent contractor to perform the work. *See Thomas,* 72 N.H. at 46, 54 A. at 286; RESTATEMENT (SECOND) OF TORTS § 427, comment *d* at 417 (1965). "[W]hether an activity is inherently dangerous is a question of fact to be determined by the trier of fact." *Elliott v. Public Service Co. of N.H.,* 128 N.H. 676, 682, 517 A.2d 1185, 1189 (1986). If the activity is, in fact, inherently dangerous, "one who undertakes [it] has a non-delegable duty to protect third parties against injury resulting from that activity." *Id.* at 679, 517 A.2d at 1187.

■ The trial judge ruled that the plaintiff failed to establish a claim under the inherently dangerous activity doctrine because the danger here arose not directly from the work required to be done, but from the negligent manner of its performance by Whitcher Builder. *See Elliott,* 128 N.H. at 679, 517 A.2d at 1187. The trial judge noted that to consider

> [t]he activity in and of itself . . . as inherently dangerous . . . would literally make the construction of every commercial or residential building in this [S]tate an inherently dangerous activity rendering the owner liable for the negligence of the contractor, and it seems to me that I cannot read that into the *Elliott* case.

We agree that construction projects, typically fraught with a variety of potential dangers that may arise if the work is not carefully done, do not, as a rule, fall within the inherently dangerous category. We hold that to be an inherently dangerous activity, construction, or any other work, must be dangerous in and of itself and not dangerous simply because of the negligent performance of the work, and that the danger must be naturally apprehended by the parties when they contract. *See Thomas,* 72 N.H. at 46–47, 54 A.2d at 286. Only then will the work constitute an inherent danger that places a non-delegable duty upon the one ordering it to protect third parties against resulting injury.

■ A review of the record indicates that the danger Whitcher Builder caused by first covering the hole with plastic instead of wood was not a "necessary and anticipated part of the work," *see id.* at 46, 54 A. at 286, and that the evidence does not show that Holy Rosary either knew or should have known that Whitcher Builder would perform the work in this potentially dangerous manner. We find that the trial judge properly ruled that because the inherent danger doctrine is inapplicable as a matter of law where, as here, the danger derived not from the nature of the work, but from the negligence of the contractor, *see Elliott,* 128 N.H. at 679, 517 A.2d at 1187, there was no issue for the jury. *See Vincent,* 129 N.H. at 625, 529 A.2d at 399.

■ The plaintiff next argues that the trial court erred by not permitting the jury to decide whether CUBC was Holy Rosary's agent, and whether, by acting negligently in its duties to supervise and control the construction, CUBC caused the plaintiff's injury. A review of the record indicates that the evidence is insufficient to enable a reasonable jury to find that Holy Rosary exercised direct control over the construction. The trial court's finding that the evidence was insufficient for a reasonable jury to determine CUBC to be an agent of Holy Rosary, however, was in error. We find that the evidence, including the contract and related correspondence between CUBC and Holy Rosary, could lead a reasonable jury to the conclusion that CUBC, as project manager, was the agent of Holy Rosary. In a February 15, 1989, letter outlining CUBC's services and fees, CUBC stated that Holy Rosary "would have a single source of responsibility whereby all disciplines (general contractors, sub-contractors, architect, engineers, interior suppliers, equipment, building inspectors, etc.) would be supervised and coordinated by Credit Union Building Corporation as Project Manager, and at the same time allow you to be in control of the project." The actual contract, signed by CUBC on February 15, 1989, and by Holy Rosary on February 16, 1989, provided that CUBC "will include in its budget a line-item for on-site supervision and project management." If a jury were to find that CUBC was Holy Rosary's agent, Holy Rosary would be liable if CUBC was responsible for the reasonable supervision and safety of the worksite and, in negligently carrying out this duty, caused the injury.

As the court noted during the last day of trial, "some conflict in the testimony" exists regarding the responsibilities of CUBC. The plaintiff's expert testified that the role of a project manager would include ensuring "that the work is being performed in an orderly and safe fashion . . . ." The expert also testified that "[i]t doesn't appear that there was adequate supervision" here. In contrast, Harvey Levin, the owner of CUBC, testified in his deposition that Whitcher Builder, not CUBC, was responsible for supervision and safety at the site. David R. Whitcher, the principal of Whitcher Builder, offered corroborating testimony, and his contract with Holy Rosary placed the responsibility for the safety of the worksite upon Whitcher Builder:

> 10.1.1 The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.
>
> . . . .
>
> 10.2.1 The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:

.1 employees on the work and other persons who may be affected thereby;

. . . .

10.2.3 The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

It is not our province, however, to weigh the evidence. We therefore reverse the directed verdict on this count and remand for a determination as to whether CUBC had a duty of supervision and responsibility for the safety of the worksite, and, if so, whether it causally breached this duty as the agent of Holy Rosary, vesting liability in Holy Rosary. *See Vincent,* 129 N.H. at 625, 529 A.2d at 399.

■ The plaintiff finally argues that the trial court erred by not permitting the jury to decide whether Holy Rosary negligently selected the contractor. As a general rule, the employer has a duty to use reasonable care to choose a contractor who is properly qualified to perform the work. 41 AM. JUR. 2d *Independent Contractor* § 26 (1968 & Supp. 1994). "[A]n employer of an independent contractor may be liable to one injured as a result of the contractor's fault where it is shown that the employer was negligent in selecting a careless or incompetent person with whom to contract." Annotation, *When Is Employer Chargeable with Negligence in Hiring Careless, Reckless, or Incompetent Independent Contractor,* 78 A.L.R.3d 910, 916 (1977).

■ The lack of due care in selection must have a causal connection to the injury sustained. RESTATEMENT (SECOND) OF TORTS § 411, comment *b* at 377 (1965). Holy Rosary cannot be held liable for having employed an incompetent contractor unless the plaintiff proves that Holy Rosary knew or by the exercise of reasonable care could have known of the contractor's lack of qualifications, and that the alleged lack of due care in selection resulted in the injury at issue. 41 AM. JUR. 2d *Independent Contractor* § 26. Here, the trial judge concluded that there was no evidence suggesting that Whitcher Builder lacked qualification:

[B]ased on the evidence I have heard in the case so far, I don't believe that there is any evidence from which a jury could find that the selection of the Whitcher Corporation was negligent. It seems to me the only evidence we have is evidence of what was done with respect to the Whitcher Corporation in terms of prior construction activity, and the arguments made with

respect to whether or not Whitcher was overextended and the like are really speculation and are not based upon evidence in this case, and I don't believe that any reasonable jury could, viewing this evidence, determine that the selection of Whitcher was negligent, that is was negligent on the part of the Defendant Holy Rosary Credit Union.

A review of the record indicates that the evidence, viewed in a light most favorable to the plaintiff, could not be construed by a reasonable jury as constituting a case of negligent selection of Whitcher Builder by Holy Rosary. *See Vincent,* 129 N.H. at 625, 529 A.2d at 399.

*Affirmed in part; reversed in part; remanded.*

All concurred.