Pichowicz v. Atlantic Richfield      CV-92-388-M   09/25/96

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Nicholas and Joan Pichowicz, Plaintiffs,
and NH VT Health Service,
    Intervenor-Plaintiff,

    v.                                            Civil No. 92-388-M

Atlantic Richfield,
    Defendant/Counter-Claimant, and
Stephen Bronstein; James Fokas;
and Herbert Miller, Defendants/
    Cross-Claimants/Counter-Defendants.


O R D E R


Plaintiffs, Nicholas and Joan Pichowicz, have sued defendants, Stephen Bronstein, James Fokas, Herbert Miller, and others, seeking compensation for personal injury and damage to their property caused by contaminants allegedly released by the defendants or from their property. Bronstein, Fokas, and Miller ("BF&M") have filed two motions for summary judgment asserting first that the claims against them are barred by a release signed by the Pichowiczes as part of a settlement of another dispute and second that they are otherwise entitled to summary judgment on several of the claims against them. The summary judgment motions are resolved as follows.

## STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party first must show the absence of a genuine issue of material fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  If that burden is met, the opposing party can avoid summary judgment on issues that it must prove at trial only by providing properly supported evidence of disputed material facts that would require trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is "material" if it might affect the outcome of the litigation, and an issue is "genuine" if the record would allow a reasonable jury to return a verdict in favor of the nonmoving party.  Anderson, 477 U.S. at 248; see also National Amusements, Inc. v. Dedham, 43 F.3d 731, 735 (1st Cir.), cert. denied, 115 S.Ct. 2247 (1995).  The record must be interpreted in the light most favorable to the nonmoving party, the plaintiffs in this case, and all inferences resolved in their favor.  Mottolo v. Fireman's Fund Ins. Co., 43 F.3d 723, 725 (1st Cir. 1995).

## BACKGROUND

Nicholas and Joan Pichowicz own property in Plaistow, New Hampshire, adjacent to property that has been in commercial use for a number of years. A shopping center was located there when BF&M bought the adjacent property in June of 1981 from Pearl M. Hoyt. Previously, ARCO and Shell gasoline stations and a laundry and dry cleaners[1] had operated on the property. In a suit filed in state court in August of 1984 against BF&M, the Pichowiczes alleged that in June 1982 water flowing from BF&M's adjacent property damaged their own property, particularly their fish ponds, gardens, dam, and other landscaping, with silt and other materials carried in the water. The parties settled the suit and signed mutual releases dated March 30, 1988.[2] In the meantime,

---

[1] Although BF&M challenge the Pichowiczes' evidence pertaining to the dry cleaning business and assert that they were unaware of its existence when they bought the property, they do not dispute that the business operated in the shopping center before they bought the property.

[2] The release signed by the Pichowiczes, and titled "General Release," states in pertinent part:

> That Nicholas and Joan P. Pichowicz, husband and wife, for and in consideration of the sum of ($20,000) Twenty Thousand Dollars . . . paid by Stephen Bronstein, James Fokas, Herbert Miller . . . , have remised released and forever discharged and by these presents do for their heirs, executors and administrators remise, release and forever discharge the said [BF&M] . . . from any and all manner of action and actions; causes of action, suits, damages, judgments, executions, claims for personal injuries, property damage and demands whatsoever, in law or in equity, which they ever had, now have or which their heirs, executors, or

3

BF&M sold the property to Chestnut Hill Realty, Inc. in November of 1984.

The Pichowiczes allege that they first learned that their wells and water supply were contaminated in September of 1989, when they were notified by the New Hampshire Department of Environmental Services. They filed suit in July 1992 against BF&M and others who had owned the property or operated businesses there alleging violations of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C.A. §§ 9607(a), the Resource Conservation and Recovery Act, 42 U.S.C.A. § 6901, et seq., New Hampshire Revised Statutes Annotated[3] § 147-B:10, and asserting various state tort claims. BF&M say that they were not aware of a contamination problem until they received the Pichowiczes' complaint in this action.

---

administrators hereafter can, shall, or may have against [BF&M] . . . for, upon, or by reason of, any matter, cause or thing whatsoever, from the beginning of the world to the day of the date of these presents and particularly, but without in any manner limiting the foregoing, on account of all claims that Nicholas and [Joan] Pichowicz have against [BF&M] . . . including but not limited to all damage claims by Nicholas and [Joan] Pichowicz in Rockingham Superior Court Docket #C-190-84, Nicholas and [Joan] Pichowicz v. Stephen Bronstein, James Fokas, and Herbert Miller . . . and all other claims of any type arising from the beginning of the world to the date this Release is signed.

[3] The abbreviation "RSA" shall be substituted for "Revised Statutes Annotated" in this Order.

## A.    The Effect of the Release

BF&M assert that the release which the Pichowiczes signed in 1988 to settle the 1982 lawsuit completely bars the present claims against them.  The Pichowiczes disagree.

New Hampshire law controls, and under New Hampshire law the meaning of a release, like any other contract, depends upon the objective intent of the parties at the time the agreement was made.  Gamble v. University of N.H., 136 N.H. 9, 13 (1992).  The interpretation of an unambiguous agreement presents a question of law, and the parties' intent is determined by the court based on the terms of the contract taken as a whole.  Id.  The meaning attributed to contract language is that which a reasonable person in the parties' position would understand.  Gamble, 136 N.H. at 15.  However, if the parties could reasonably differ as to the meaning of a provision, it is ambiguous and extrinsic evidence may be considered.  Id.  Further, if an agreement is found to be ambiguous, the ambiguity must be resolved by the trier of fact unless, considering all of the evidence, a rational factfinder could resolve the ambiguity in only one way.  Gamble, 136 N.H. at 15 (court determined meaning of ambiguous contract where, upon consideration of extrinsic evidence, only one interpretation was reasonable); Public Service Co. of N.H. v. Town of Seabrook, 133 N.H. 365, 370 (1990) (ambiguous contract presents a question of fact).

5

The release asserted by BF&M purports to discharge them from all liability for causes of action that the Pichowiczes "ever had [or] now have" against BF&M from "the beginning of the world" to the date of the release. The release is facially silent, however, as to causes of action based on facts or circumstances that were unknown to the Pichowiczes at the time of signing the release and that might accrue in the future.[4] BF&M contend that the parties intended to release each other from _all_ causes of action, including those that were unknown at the time of signing. The Pichowiczes assert that the parties intended only to release each other from liability based on known circumstances.[5] As both interpretations are plausible under the terms of the release, its scope is ambiguous.[6]

---

[4] Although the release purports to discharge claims that "their heirs, executors, or administrators hereafter can, shall, or may have against [BF&M]," that forward-looking language, by its own terms, is not applicable to the Pichowiczes themselves.

[5] The Pichowiczes also argue that if the release were interpreted to bar their present claims for injury and damage that were unknown at the time of signing, then a material mistake existed as to the extent of the injuries addressed by the release. See, e.g., Maltais v. National Grange Mut. Ins. Co., 118 N.H. 318, 320 (1978). As the release is found to be ambiguous, the alternative argument need not be addressed.

[6] It is also noteworthy that the New Hampshire Supreme Court has required exculpatory language in releases to be clear and specific to be effective. See Wright v. Loon Mountain Recreation Corp., 663 A.2d 1340, 1343 (N.H. 1995).

It is undisputed that neither the Pichowiczes nor BF&M knew of the contamination problem underlying this action before the releases were signed. The Pichowiczes' causes of action alleged in this case did not accrue until they knew or reasonably should have known that their injuries or damage were caused by the hazardous substances found in their water. See 42 U.S.C.A. § 9613(g)(1)(A) & § 9658(a)(1); American Glue & Resin v. Air Products & Chemicals, 835 F. Supp. 36, 45-46 (D. Mass. 1993) (discussing CERCLA preemption of state law discovery rule); see also Conrad v. Hazen, 665 A.2d 372, 374-75 (N.H. 1995) (discussing New Hampshire rule of accrual). Although the parties offer extrinsic evidence to bolster their different views of the meaning of the release, the evidence taken as a whole does not provide such a one-sided view of the parties' intent that only one interpretation is reasonable. Because a factual issue remains concerning whether the parties intended to release each other from claims that were unknown and causes of action not yet accrued when the releases were signed, BF&M is not entitled to summary judgment based on the release signed by the Pichowiczes.

**B. Liability Issues**

BF&M also move for summary judgment on liability for the claims brought against them asserting that the Pichowiczes cannot show that BF&M owned the property at the time of the disposal of

7

hazardous substances within the meaning of the applicable CERCLA and New Hampshire statutory provisions. BF&M also assert statutory defenses to both the CERCLA claim and the New Hampshire statutory claim under § 147-B:10. In addition, BF&M argue that the Pichowiczes cannot prove their tort claims for negligence and nuisance. The Pichowiczes oppose summary judgment and have submitted two volumes of supporting materials.

## 1. Defendants' Motions to Strike

BF&M have moved to strike or have the court disregard most of the supporting materials filed by the Pichowiczes on grounds that the materials do not meet the admissibility standards of Federal Rule of Civil Procedure 56(c) and (e). BF&M's objections to plaintiffs' expert witness's testimony and affidavit are denied for purposes of the summary judgment motion, as expert witnesses may rely on otherwise inadmissible evidence if it is of a type relied on by experts in the field. See Fed. R. Evid. 703; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 595 (1993). BF&M have not addressed whether the challenged portions of the expert's statements meet the requirements of Rule 703.

BF&M challenge portions of individuals' deposition testimony and ARCO's interrogatory answer on behalf of the corporation by merely identifying those parts as either hearsay or lacking personal knowledge, without making any showing that the

8

declarants lacked personal knowledge. The challenged statements appear to be sufficiently based on personal knowledge to be admissible in opposition to summary judgment. The motion is denied.

BF&M also move to strike documentary evidence that is not properly authenticated. All documentary evidence submitted in support of or in opposition to summary judgment must meet the authentication standard required by Federal Rules of Evidence 901 and 902. See, e.g., 10A Charles A. Wright, et al., Federal Practice and Procedure § 2722 at 58-60 (1983 & 1995 Supp.). For purposes of the summary judgment motion and objection, however, the court assumes that the submitted documents can be properly authenticated as BF&M have not suggested that any of the documents are not what they purport to be.

The Pichowiczes did not object to BF&M's motion to strike exhibits attached to their unidentified motion to supplement the record, which was filed in violation of the Local Rules of this district. See LR 7.1. Although a district court may consider late affidavits in opposition to summary judgment, see Fed. R. Civ. P. 6(d), the Pichowiczes failed to accompany their submissions with an affidavit and offer no explanation for late filing. See Orsi v. Kirkwood, 999 F.2d 86, 91 (4th Cir. 1993). BF&M's motion is granted, and the Pichowiczes' supplementary materials are stricken from the record.

## 2. Liability Under 42 U.S.C.A. § 9607(a)(2) and RSA § 147-B:10

Liability under both § 9607(a)(2)[7] of CERCLA and RSA § 147-B:10[8] of New Hampshire's Hazardous Waste Cleanup Fund Chapter requires proof that disposal of hazardous substances at a

---

[7] Section 9607(a)(2) provides as follows in pertinent part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section-- . . .
(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, . . . shall be liable for--
    (A) all cost of removal or remedial action incurred by the United States Government or a State . . .
    (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
    (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction or loss resulting from such a release; and
    (D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

[8] RSA § 147-B:10,I (1995 Supp.) provides in pertinent part:

Subject only to the defenses set forth in RSA 147-B:10-a and the exclusions and limitations set forth in RSA 147-B:10, IV and V, any person who: . . .
(b) Owned or operated a facility at the time hazardous waste or hazardous materials were disposed there; . . . shall be strictly liable for all costs incurred by the state in responding to a release or threatened release of hazardous waste or hazardous material at or from the facility as specified in paragraph II.

facility[9] occurred while it was owned or operated by the defendants.  See, e.g., City of Toledo v. Beazer Materials and Services, 923 F. Supp. 1001, 1002 (N.D. Ohio 1996) (CERCLA); CP Holdings v. Goldberg-Zoino & Assocs., 769 F. Supp. 432, 440 (D.N.H. 1991).  BF&M assert that the Pichowiczes cannot carry their burden of showing that disposal of hazardous substances occurred while BF&M owned the property.  It is undisputed for purposes of the present summary judgment motion that hazardous substances have been found in the water supply on the Pichowiczes' property, which is next to and downgrade from the shopping center property; that BF&M owned the property between June 1981 and November 1984, and that BF&M were not involved in the initial introduction of hazardous substances to the property. The Pichowiczes assert that BF&M is liable for disposal of hazardous substances either due to dispersal of contaminated soil during the reconstruction of the septic system at the shopping center or because of the passive migration of hazardous substances through the soil and groundwater to their property.

BF&M rely on a narrow interpretation of "disposal," for purposes of liability under § 9607(a)(2) of CERCLA, as the initial introduction of hazardous substances to the site.  The

---

[9]  The parties do not dispute that the property owned by BF&M meets the statutory definition of "facility."  See 42 U.S.C.A. § 9601(9); RSA § 147-B:2,III (1990).

11

First Circuit has not directly construed the term "disposal" in this context. See In re Hemingway Transport, Inc., 993 F.2d 915, 932 n.23 (1st Cir.) (parties did not challenge bankruptcy court's ruling that passive migration constitutes disposal under § 9607(a)(2)), cert. denied, 510 U.S. 914 (1993). Most circuits that have decided the question, however, have determined that liability under § 9607(a)(2) is not limited to the initial disposal of a hazardous substance or even to active participation in disposal. See, e.g., Kaiser Aluminum and Chem. Corp. v. Catellus Dev. Corp., 976 F.2d 1338, 1342-43 (9th Cir. 1992) ("the term 'disposal' should not be limited solely to the initial introduction of hazardous substances onto property" (relying on Tanglewood East Homeowners v. Charles-Thomas, Inc., 849 F.2d 1568 (5th Cir. 1988)); Nurad, Inc. v. William E. Hooper & Sons Co., 966 F.2d 837, 844-46 (4th Cir.) ("disposal" does not require active participation but instead includes liability for migration of hazardous substances), cert. denied, 506 U.S. 940 (1992); Reichhold Chemicals, Inc. v. Textron, Inc., 888 F. Supp. 1116, 1129 (N.D. Fla. 1995) ("the mere migration of contaminants from adjacent land constitutes disposal for the purposes of CERCLA"); but see Snediker Developers Ltd. Partnership v. Evans, 773 F. Supp. 984, 989 (E.D. Mich. 1991) ("mere migration of hazardous waste, without more, does not constitute disposal" within statutory definition). As the New Hampshire Supreme Court has

12

not interpreted the scope of "disposal" for purposes of RSA § 147-B:10(b), the statute may be interpreted with reference to the parallel CERCLA provision. See, e.g., Dedham Water Co. v. Cumberland Farms Dairy, 889 F.2d 1146, 1156 (1st Cir. 1989), and compare RSA 147-B:2,II (definition of disposal for New Hampshire's Hazardous Waste Cleanup Fund chapter) with 42 U.S.C.A. § 6903(3) (definition of disposal used in CERCLA).[10]

BF&M do not dispute that hazardous substances migrated from the shopping center property to the Pichowiczes' property, nor do they dispute that they excavated and reconstructed the septic system on the property. Based on the weight of authority favoring a broad definition of "disposal," evidence of the dispersal of contaminated soil from the septic system as well as the passive migration of hazardous substances from the BF&M property to the Pichowiczes' property,[11] is sufficient to raise a material factual dispute as to BF&M's liability under

---

[10] This ruling is for purposes of the present summary judgment motion only without prejudice to the parties' efforts to distinguish the meaning of the New Hampshire statute from the interpretation of CERCLA.

[11] The Pichowiczes' expert witness, Dr. Raymond Talkington, a certified professional geologist and licensed site professional for assessing hazardous waste sites, gave his opinion that the source for substances causing contamination of the Pichowiczes' property was the ARCO station and the dry cleaning operation located on the shopping center site before BF&M purchased the property.

§ 9607(a)(2) and RSA § 147-B:10, which of course precludes summary judgment.

### a.    The "third-party defense" Under CERCLA

CERCLA provides relief from liability for defendants who can establish that a third party was solely responsible for the hazardous substance problem.  42 U.S.C.A. § 9607(b)(3); In re Hemingway, 993 F.2d at 932.  To gain the protection of the "third-party defense" from liability under § 9607(a), a defendant must prove by a preponderance of the evidence that: (1) the release or the threat of release of a hazardous substance and resulting harm were caused solely by a third party who is not an agent or employee and whose conduct was not connected to the defendant through a "contractual relationship," (2) the defendant "exercised due care with respect to the hazardous substance concerned" under all of the relevant circumstances, and (3) the defendant "took precautions against the foreseeable acts or omissions of any such third party and the [foreseeable] consequences."  42 U.S.C.A. § 9607(b)(3).

### (i)   Innocent Landowner

Because a "contractual relationship" is defined to include the transfer of title to property, a defendant who buys property with hazardous substances ordinarily has a contractual

14

relationship that would preclude the third party defense unless he can show that one of the exceptions provided by 42 U.S.C.A. § 9601(35)(A) applies.[12] If a defendant can meet the requirements of § 9601(35)(A), he is an "innocent purchaser" despite his contractual connection to the disposal of the hazardous substances and then must prove the remaining elements of the third-party defense to preclude CERCLA liability. See Idylwoods Assoc. v. Mader Capital, 915 F. Supp. 1290, 1300 (W.D.N.Y. 1996).

BF&M assert that they meet the criteria of § 9601(35)(A)(i), which requires that the defendants did not know or have reason to know that hazardous substances were present when they purchased the property. The knowledge element of subsection (i) is further defined by § 9601(35)(B) to mean that at the time of buying the property the defendant must have undertaken "all appropriate inquiry into the previous ownership and uses of the property consistent with good commercial or customary practice in an

---

[12] BF&M do not dispute that the transfer of the property to them from the prior owner established a "contractual relationship" within the meaning of the statute. See Foster v. United States, 922 F. Supp. 642, 654 (D.D.C. 1996) (deeds and instruments transferring possession of property normally sufficient contractual relationship within statutory meaning); but see Westwood Pharmaceuticals v. National Fuel Gas Distribution, 964 F.2d 85, 89 (2d Cir. 1992) (third-party defense precluded "only if the contract between the landowner and the third party somehow is connected with the handling of hazardous substances").

effort to minimize liability."  Id.  To evaluate whether the inquiry was appropriate within the meaning of the statute, the court must consider the defendants' specialized knowledge or experience, "the relationship of the purchase price to the value of the property if uncontaminated, commonly known or reasonably ascertainable information about the property, the obviousness of the presence or likely presence of contamination at the property, and the ability to detect such contamination by appropriate inspection."  § 9601(35)(B).  The extent of the required inquiry is not otherwise defined in CERCLA and remains an uncertain area of the law.  See United States v. A & N Cleaners and Launderers, Inc., 854 F. Supp. 229, 241-42 (S.D.N.Y. 1994).

## (ii) BF&M as an Innocent Landowner

Bronstein investigated the shopping center property on behalf of BF&M prior to the purchase.  Bronstein[13] stated in his deposition and affidavit in support of the summary judgment motion that he had purchased two or three commercial properties before buying the shopping center, that he had no special expertise in the area of environmental contamination, that he personally walked around and viewed the property including

_____

[13] Bronstein states that both he and his father were involved in the purchase and that his statements include his father's knowledge and activities.

16

visiting the existing tenants in the shopping center, and reviewed maps and plans of the property. He stated that he was not aware of any environmental contamination at the property. He admitted that he was aware that two gasoline stations previously had been located on the property and that the sewage for the property was processed in a septic system. He stated that he did not inquire about prior owners or uses of the property and did not know that a dry cleaners had operated there.

Because of the poor condition of the property and his concern about potential liabilities associated with purchasing it and on the advice of his attorney, Bronstein hired an engineering firm to investigate the property. The engineering report focused on the existing conditions of the property, apparently without environmental testing (except for a well water sample which revealed no contamination), and the feasibility of expanded use of the property. The engineering report noted that "[t]here is little in the way of available information on the nature and extent of the existing sewage disposal system" but concluded that with renovation the site would provide sufficient potential for sewage disposal and an adequate water supply.

BF&M rely heavily on the opinion of their expert witness, Dr. Roy, president of a firm that provides environmental engineering and consulting services. Dr. Roy gave his opinion that the Bronsteins, on behalf of BF&M, made all appropriate

17

inquiry under the environmental standards that existed in 1981 when they bought the property. They assert that Dr. Roy's experience in the area of environmental regulation makes him "unusually well-qualified to discuss environmental standards" that existed in 1981 when BF&M bought the property. While that may be true, that expertise does not carry the day for BF&M.

To qualify as innocent landowners for purposes of the third-party defense, BF&M must show by a preponderance of the evidence that they made "all appropriate inquiry into the previous ownership and uses of the property consistent with good commercial or customary practice in an effort to minimize liability." 42 U.S.C.A. § 9601(35)(B). They offer no evidence that Dr. Roy was experienced in the customary practices for buying commercial real estate for purposes of evaluating an adequate inquiry to minimize liability. Cf. United States v. Serafini, 791 F. Supp. 107, 108 (M.D. Pa. 1990) (affidavits of real estate experts used to establish standard for adequate inquiry in 1969). In addition, Dr. Roy stated in his deposition that he based his opinion on his understanding that Bronstein was familiar with the operation of septic systems and used to dealing with civil engineers that design septic systems. He also understood that Bronstein had inquired about past practices and users of the property. Dr. Roy found that Bronstein was experienced in real estate transactions in New Hampshire, and

18

stated "I would expect that a competent real estate person would inquire about past and present uses of the property."

It is undisputed that Bronstein, acting on behalf of BF&M, made no inquiry about past tenants' uses of the property or the septic system. He knew that two gasoline stations had operated on the property, and the engineering report lists two vacant gasoline stations on the property at the time of the investigation in 1981. The record includes no evidence that Bronstein investigated the condition of the gasoline stations or their prior uses. Evidence exists in the record that components of gasoline are included in the hazardous substances that have been found on the Pichowiczes' property. Bronstein also did not learn that a dry cleaners had operated on the property although that information would have been available from the seller who had leased the space, and evidence exists in the record that the dry cleaning operation contributed to the hazardous substances that have been found on the Pichowiczes' property.

CERCLA provides an incentive to potential property owners to investigate for the presence of hazardous substances, and a failure to investigate, in the face of an affirmative duty to do so, precludes a finding of an appropriate inquiry.[14] See Foster v. United States, 922 F. Supp. at 656-57. Because BF&M, the

---

[14] The purchase and selling prices of the property do not appear to reflect a reduced value due to contamination.

19

party moving for summary judgment, has the burden of proving the third-party defense, the court will grant the motion only if: "(1) the moving party initially produces enough supportive evidence to entitle the movant to judgment as a matter of law (i.e., no reasonable jury could find otherwise even when construing the evidence in the light most favorable to the non-movant), and (2) the non-movant fails to produce sufficient responsive evidence to raise a genuine dispute as to any material fact." Murphy v. Franklin Pierce Law Center, 882 F. Supp. 1176, 1180 (D.N.H. 1994) (citing Fitzpatrick v. Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993)), aff'd, 56 F.3d 59 (1st Cir. 1995) (table). This record, as developed (or not developed) does not support the conclusion that a reasonable jury could only find that BF&M made "all appropriate inquiry" under the circumstances. See Anderson, 477 U.S. at 251. As BF&M has failed to carry their burden of proving that they were innocent landowners, BF&M is not entitled to summary judgment based on the "third-party defense."

### b. Defenses Under RSA § 147-B:10-a

The statutory defenses in RSA § 147-B:10-a mirror the defenses offered under § 9607(b) of CERCLA. BF&M relies on the state counterpart to the CERCLA "third-party defense." As no court has applied or interpreted the New Hampshire statutory defense, it may be interpreted to operate in the same manner as

20

the CERCLA counterpart.  Accordingly, for the same reasons BF&M
is not entitled to summary judgment based on the third-party
defense under CERCLA, summary judgment based on a similar or
identical defense under RSA § 147-B:10-a is also denied.


### 3.    The Negligence and Nuisance Claims

BF&M also move for summary judgment in their favor on the
Pichowiczes' negligence and nuisance claims.  The Pichowiczes'
response is not adequate to avoid summary judgment.[15]

The Pichowiczes allege that BF&M were negligent in their
ownership and operation of the shopping center property.  To
maintain their negligence claim the Pichowiczes must be able to
show that "there exists a duty, whose breach by the defendant
causes the injury for which the plaintiff seeks to recover."
Goodwin v. James, 134 N.H. 579, 583 (1991).  However, defendants
are not liable "if they could not reasonably foresee that their
conduct would result in an injury to another or if their conduct
was reasonable in light of the anticipated risks."  Manchenton v.

---

[15]  The Pichowiczes' only opposition to BF&M's motion for
summary judgment on both tort claims is contained in two
sentences which generally refer to their opposition to BF&M's
motion on the statutory claims.  They offered nothing further
when BF&M pointed out that deficiency.  Under these
circumstances, the Pichowiczes' objection could be deemed waived
without further consideration.  See New Hampshire Motor Transport
Ass'n v. Town of Plaistow, 67 F.3d 326, 331 (1st Cir. 1995),
cert. denied, 116 S.Ct. 1352 (1996); Grella v. Salem Five Cent
Savings Bank, 42 F.3d 26, 36 (1st Cir. 1994).

<u>Auto Leasing Corp.</u>, 135 N.H. 298, 303 (1992). Further, "[n]ot every risk that might be foreseen gives rise to a duty to avoid a course of conduct; a duty arises because the likelihood and magnitude of the risk perceived is such that the conduct is unreasonably dangerous." <u>Id.</u> at 305.

The Pichowiczes bear the burden of proof on their negligence claim. However, they do little more than generally reference their argument and the record evidence concerning BF&M's conduct prior to purchasing the property. On the current record, it is undisputed that BF&M did not know of the contamination problem at any time while they owned the property. Although, on the record developed to date, BF&M were unsuccessful in carrying their burden to establish a third-party defense to CERCLA liability based on a showing that they made "all adequate inquiry" before buying the property, that does not necessarily preclude summary judgment in their favor on plaintiffs' negligence claim, where they do not bear the burden. It is not clear, that the Pichowiczes have not demonstrated, that the requirements for a third-party defense under CERCLA are coextensive with the elements of common-law negligence. The Pichowiczes fail to point to particular evidence in the record to show that BF&M could have reasonably foreseen that contamination of neighboring property would result from their conduct <u>during</u> their ownership and operation of the property. In addition, they have not pointed to

22

evidence in the record to show that if BF&M had undertaken "all appropriate inquiry" before they purchased the shopping center property, contamination of neighboring property would not have occurred. The court is not inclined to speculate or to search for support that has not been supplied. As the Pichowiczes have not carried their burden of establishing facts supportive of their negligence claim, and have failed to point to any genuine dispute as to a material fact, BF&M are entitled to summary judgment on Count VII.

"'Liability for common law nuisance may be established if the landowner knew or had reason to know that a . . . nuisance existed.'" <u>Koch v. Randall</u>, 136 N.H. 500, 503 (1992) (quoting <u>State v. Charpentier</u>, 126 N.H. 56, 62 (1985)). "Conduct which unreasonably interferes with the rights of others may be both a public and a private nuisance . . . and both actions involve an analysis of similar considerations." <u>Robie v. Lillis</u>, 112 N.H. 492, 495 (1972) (citations omitted). The Pichowiczes also have failed to make the necessary factual showing in support of their nuisance claim to avoid summary judgment. Summary judgment on Count VIII is granted in favor of BF&M.

### 4. Claims For Bodily Injury

BF&M move for judgment as a matter of law that they are not liable for any bodily injury that may have begun before BF&M

23

owned the property.  They fail, however, to support their motion with any legal authority.  As the moving party bears the burden of showing that it is <u>entitled</u> to judgment as a matter of law, <u>see</u> <u>Desmond v. Varrasso (In re Varrasso)</u>, 37 F.3d 760, 764 (1st Cir. 1994), and BF&M has failed to carry its burden, summary judgment is denied on this issue.

**<u>CONCLUSION</u>**

The defendants' motion for summary judgment (document no. 76) is denied as to Counts V and VI and granted as to Counts VII and VIII.  Defendants' motion for summary judgment (document no. 75.2) is denied.  The defendants' motions to strike are denied in part (documents nos. 100 and 101), and granted in part (document no. 105).


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

September 25, 1996

cc:  Linda J. Argenti, Esq.
     Joseph G. Abromovitz, Esq.
     M. Ellen LaBrecque, Esq.
     R. Stevenson Upton, Esq.
     Peter S. Wright, Jr., Esq.
     Thomas H. Richard, Esq.